**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| CHAD HATTEN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>TARONIS TECHNOLOGIES, INC., ROBERT L DINGESS, SCOTT MAHONEY, ERMANNO P. SANTILLI, KEVIN POLLACK, and WILLIAM W. STAUNTON,<br><br>Defendants. | Civil Action No. __________________<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS** |

Plaintiff Chad Hatten ("Plaintiff"), individually and on behalf of all other persons similarly situated, by the undersigned attorneys, alleges the following based upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the defendants' public documents, announcements made by defendants, U.S. Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Taronis Technologies, Inc. ("Taronis" or the "Company"), and information readily available on the Internet. Plaintiff believes that substantial evidentiary support will exist for these allegations after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of all persons or entities who purchased or otherwise acquired Taronis common stock between January 28, 2019 and February 12, 2019, both days inclusive (the "Class Period"), seeking to recover damages caused by

defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

## JURISDICTION & VENUE

2. The federal law claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and § 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder by the SEC.

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as well as Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. This Court has jurisdiction over each defendant named herein because each defendant has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act because many of the false and misleading statements were made in or issued from this District, and Taronis' U.S. offices are located within this District.

6. In connection with the acts, conduct, and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce including, but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

7. Plaintiff purchased Taronis securities during the Class Period at artificially inflated prices as set forth in the certification annexed hereto.

8. Defendant Taronis is a Delaware corporation headquartered in Clearwater, Florida with its principal executive offices located at 11885 44th Street North, Clearwater, Florida 33762. Taronis common stock trades under the ticker symbol "TRNX" on the NASDAQ stock exchange.

9. Defendant Robert Dingess serves as Chairman of the Board of Directors of the Company.

10. Defendant Scott Mahoney serves as Chief Executive Officer, President, and a member of the Board of Directors of the Company.

11. Defendant Ermanno P. Santilli serves as Chief Technology Officer and a member of the Board of Directors of the Company.

12. Defendant Kevin Pollack serves as a member of the Board of Directors of the Company.

13. Defendant William W. Staunton serves as a member of the Board of Directors of the Company.

14. Defendants Dingess, Mahoney, Santilli, Pollack, and Staunton are together referred to herein as the "Individual Defendants."

15. Each of the Individual Defendants: (a) directly participated in the management of the Company; (b) was directly involved in the day-to-day operations of the Company at the highest levels; (c) was privy to confidential proprietary information concerning the Company and its business and operations; (d) was directly or indirectly involved in drafting, producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein; (e) was directly or indirectly involved in the oversight or implementation of the Company's internal controls; (f) was aware of or recklessly disregarded the fact that false and misleading statements

were being issued concerning the Company; and/or (g) approved or ratified these statements in violation of the federal securities laws.

16. Together, Taronis and the Individual Defendants are referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

17. Taronis purportedly operates as an energy company that offers technology solutions to create, process, and produce hydrogen-based fuel through the gasification of carb-rich liquids. Taronis formerly operated under the name of MagneGas Applied Technology Solutions, Inc.

### Defendants' False and Misleading Class Period Statements

18. On January 28, 2019, the Company announced a purported contract for use of its metal cutting fuel by the City of San Diego, which received widespread attention.

19. The Company made this announcement via press releases which stated in relevant part:

> ***Major New Client Win Southern California***
>
> TAMPA, Fla., Jan. 28, 2019 (GLOBE NEWSWIRE) -- **MagneGas Applied Technology Solutions, Inc. ("MagneGas" or the "Company") (NASDAQ: MNGA)**, a leading clean technology company in the renewable resources and environmental solutions industries, announced today that the City of San Diego has elected to use MagneGas as its metal cutting fuel of choice, marking the first major city contract for the adoption of our metal cutting fuels. The City of San Diego has historically used acetylene to maintain a wide range of equipment used for waste removal, maintenance and infrastructure support and as of this contract, the City will immediately begin adoption of MagneGas' cleaner and safer fuel products. In addition, the San Diego Continuing Education Cultural Complex ("ECC") has elected to begin using MagneGas for the training and recertification of welders in the southern California market.
>
> "We are grateful for the opportunity to serve the City of San Diego and the San Diego Continuing Education Cultural Complex," commented Scott Mahoney, Chief Executive Officer of MagneGas. "We have been steadily marketing our

> propriety metal cutting fuel for one year since acquiring Complete Welding of San Diego in January of last year."
>
> "We have been presenting our unique capabilities through periodic live demonstrations of our technology, and we have been patiently supporting the local market as we gained the trust and confidence of some of the largest consumers of metal cutting fuels in the southern California market. The City of San Diego's decision to adopt our product is a major milestone in our growth efforts in California."
>
> Mr. Mahoney concluded, "We are also very proud of our new relationship with the San Diego Continuing Education Cultural Complex. This is one of the premier training and recertification centers for welders in southern California, and we're proud to help shape this aspect of the curriculum going forward. This relationship will quickly serve as a powerful platform for promoting our products and building new client relationships across the southern part of the state. Being deeply involved in the educational aspect of this industry is strategically important because we have the responsibility to train the next generation of welders on the newest and safest technologies and have them carry it forward in their careers."

20. On this news, the Company's stock rapidly increased over 25% in the following two days.

21. On January 29, 2019, the Company amended its certificate of incorporation to effectuate a reverse stock split, with every 20 shares of outstanding Company stock becoming 1 share of Company stock at the close of business on January 30, 2019.

22. On January 31, 2019, the Company changed its named from MagneGas Applied Technology Solutions, Inc. to Taronis.

23. On February 6, 2019, the Company announced a secondary stock offering registering over 3 million shares.

24. The statements referenced in ¶¶ 18-19 above were materially false and/or misleading because they misinterpreted and failed to disclose the following adverse facts pertaining to the Company's business and operations which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements

and/or failed to disclose that: (i) the Company did not have a contract with the City of San Diego; (ii) the Company or its management had engaged in a scheme to defraud; and (iii) that as a result of the foregoing, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

25. Following the rapid rise of the Company's stock price, the Company retracted its prior announcement about a contract with the City of San Diego.

26. On February 12, 2019, the Company issued a Form 8-K disclosing:

> On January 28, 2019, Taronis Technologies, Inc., formerly known as MagneGas Applied Technology Solutions, Inc. (the Company) issued a press release and filed a corresponding Current Report on Form 8−K with the SEC, which stated that the City of San Diego had elected to use MagneGas2 as its metal cutting fuel of choice and that this was the first major city contract for the adoption of the Company's metal cutting fuels. The Company has determined that it is necessary to correct its prior disclosure. The Company has an approval and a written authorization from the City of San Diego's Fleet Operations to move forward with the procurement of gas and other hard goods from the Company at three different locations within the City. This procurement covers more than one division within the municipality, and was received from a city official with sufficient authority to approve the procurement process. In the welding supply and gas distribution business purchases and sales of hard goods and gases are typically made through a process whereby a purchaser receives a quote for goods from the seller and then places an order which is later memorialized in a purchase order. The Company treats purchase orders as contracts and made its prior disclosure with that treatment in view, however, the Company does not have any formal binding contracts, agreements or long−term purchase commitments with the City of San Diego beyond the existing approval, nor any commitment that any of the Company's products will be purchased as the products of choice for their respective applications.

27. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and the other members of the Class have suffered significant losses and damages.

**ADDITIONAL ALLEGATIONS OF SCIENTER**

28. As alleged herein, Defendants acted with scienter since they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding the Company, their control over, and/or receipt and/or modification of Company's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Taronis, participated in the fraudulent scheme alleged herein.

**NO SAFE HARBOR**

29. The statutory safe harbor provided for certain forward-looking statements does not apply to any of the false statements alleged herein. None of the statements alleged herein is a "forward-looking statement" and no such statement was identified as a "forward-looking statement" when made. Rather, the statements alleged herein to be false and misleading all relate to facts and conditions existing at the time the statements were made. Moreover, cautionary statements, if any, did not identify important factors that could cause actual results to differ materially from those in any forward-looking statements.

30. In the alternative, to the extent that the statutory safe harbor does apply to any statement pleaded herein that is deemed to be forward-looking, the Defendants are liable for such false forward-looking statements because, at the time each such statement was made: (i) the speaker actually knew and/or recklessly disregarded the fact that such forward-looking statement was materially false or misleading and/or omitted facts necessary to make statements previously

made not materially false and misleading; and/or (ii) each such statement was authorized and/or approved by a director and/or executive officer of the Company who actually knew or recklessly disregarded the fact that each such statement was false and/or misleading when made.

31. None of the historic or present tense statements made by the Defendants was an assumption underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Taronis securities during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

33. The members of the Class are so numerous that joinder of all members is impracticable, since Taronis has millions of shares of stock outstanding and because the Company's shares were actively traded on the NASDAQ. As of April 9, 2018, Taronis had more than 11 million shares issued and outstanding. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class and that they are geographically dispersed.

34. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class, which predominate over questions that may affect individual Class members, include, *inter alia*:

(a) whether the Defendants violated the Exchange Act;

(b) whether the Defendants omitted and/or misrepresented material facts in their publicly-disseminated reports, press releases, and statements during the Class Period;

(c) whether the price of Taronis securities was artificially inflated during the Class Period as a result of the material omissions and/or misrepresentations complained of herein; and

(d) whether the members of the Class have sustained damages as a result of the decline in value of Taronis' stock when the truth was revealed.

35. Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from the Defendants' wrongful conduct in a substantially identical manner.

36. Plaintiff will adequately protect the interests of the Class and has retained counsel experienced in class action securities litigation. Plaintiff has no interests that conflict with those of the other members of the Class.

37. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CLAIMS FOR RELIEF

## COUNT I

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants

38. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

39. This Count, asserted against all of the Defendants, is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

40. During the Class Period, the Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and/or misleading statements specified above, which they knew or deliberately disregarded were false and/or misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading.

41. The Defendants violated § 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a) Employed devices, schemes and artifices to defraud;

(b) Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading; and/or

(c) Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Taronis securities during the Class Period.

42. The Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of Taronis were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public;

and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These Defendants, by virtue of their receipt of information reflected the true facts regarding Taronis, their control over and/or receipt of and/or modification of Taronis' allegedly materially false and misleading statements, and/or their associations with the Company, which made them privy to confidential proprietary information concerning Taronis, participated in the fraudulent scheme alleged herein.

43. The Individual Defendants, who are senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Taronis personnel to members of the investing public, including Plaintiff and the Class.

44. As a result of the foregoing, the market price of Taronis securities was artificially inflated during the Class Period. Unaware of the falsity of the Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Taronis securities during the Class Period in purchasing Taronis securities at prices that were artificially inflated as a result of the Defendants' false and misleading statements.

45. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

46. By reason of the foregoing, the Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder and are liable to Plaintiff and the other

members of the Class for the substantial damages they suffered in connection with their purchases of Taronis securities during the Class Period.

**COUNT II**

**Violation of Section 20(a) of the Exchange Act Against the Individual Defendants**

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. During the Class Period, the Individual Defendants participated in the operation and management of Taronis and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. As a consequence of their senior positions, the Individual Defendants knew or recklessly disregarded the fact that the adverse information specified herein had not been disclosed to, and was being concealed from, the investing public. Plaintiff and the other members of the Class had no access to such information, which was and is solely under the control of the Defendants.

49. As officers and/or directors of a publicly-owned company, the Individual Defendants had a duty to disseminate accurate and truthful information about the Company to the investing public, and to correct promptly any public statements issued by Taronis that had become materially false or misleading.

50. As a result of their positions of control and authority as senior officers and/or directors of the Company, the Individual Defendants were able to, and did, control the contents of the various reports, press releases, and public filings that Taronis disseminated in the marketplace during the Class Period concerning its business operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Taronis to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling

persons" of Taronis within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged herein, which artificially inflated the market price of Taronis securities.

51. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Taronis.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment as follows:

(A) Declaring this action to be a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, and designating Plaintiff as class representative and Plaintiff's counsel as Class Counsel;

(B) Awarding compensatory damages in favor of Plaintiff and the other members of the Class against all of the Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(C) Awarding Plaintiff and the Class their reasonable costs and expenses incurred in the prosecution of this action, including reasonable attorneys' fees and expert fees; and

(D) Awarding such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED: April 12, 2019

**TOMCHIN & ODOM, P.A.**

*/s/ Kenneth A. Tomchin*

Kenneth A. Tomchin, Esq.
Florida Bar No. 0724955
Brett P. Abner
Florida Bar No. 0707996
6816 Southpoint Parkway, Suite 400

Jacksonville, FL 32216
Tel: (904) 353-6888
Fax: (904) 353-0188
tomchin@tomchinandodom.com
pleadings@tomchinandodom.com

***Local Counsel for Plaintiff***

**WOLF HALDENSTEIN
ADLER FREEMAN & HERZ LLP**
Matthew M. Guiney
Kevin G. Cooper
270 Madison Avenue
New York, NY 10016
Tel: 212-545-4600
Fax: 212-686-0114
Guiney@whafh.com
kcooper@whafh.com

***Counsel for Plaintiff***