Laura Sixkiller (State Bar No. 022014)
laura.sixkiller@us.dlapiper.com
**DLA PIPER LLP (US)**
2525 East Camelback Road, Suite 1000
Phoenix, Arizona 85016
Telephone:  (480) 606-5100
Facsimile:   (480) 606-5101
dlaphx@us.dlapiper.com

B. Warren Pope (admitted *pro hac vice*)
wpope@kslaw.com
Brian Barnes (admitted *pro hac vice*)
bbarnes@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100

Lisa Bugni (admitted *pro hac vice*)
lbugni@kslaw.com
**KING & SPALDING LLP**
101 Second Street, Suite 2300
San Francisco, California 94105
Telephone:  (415) 318-1200
Facsimile:  (415) 318-1300

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Kui Zhu, et al., | Case No. CV-19-04529-PHX-GMS |
| Plaintiffs, <br> v. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND MEMORANDUM OF LAW IN SUPPORT** |
| Taronis Technologies Incorporated, et al., | |
| Defendants. | |

///

///

///

## TABLE OF CONTENTS

**ARGUMENT**.............................................................................................................................. 2

**I.**      **Plaintiff Fails to Plead Any False or Misleading Statement.** ....................................... 2

**II.**     **Plaintiff Fails to Adequately Plead a Strong Inference of Scienter.**............................ 6

**III.**    **Plaintiff Fails to Plead Loss Causation Adequately.**........................................................ 9

**IV.**     **Plaintiff Fails to Adequately Plead Scheme Liability.** ................................................. 11

**CONCLUSION** ...................................................................................................................... 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Allied Nevada Gold Corp. Sec. Litig.*,
743 F. App'x 887 (9th Cir. 2018) ................................................................................ 11

*In re Allied Nevada Gold Corp. Sec. Litig.*,
No. 3:14-cv-00175-LRH-WGC, 2017 WL 4172611 (D. Nev. Sept. 20,
2017) .......................................................................................................................... 11

*In re Ariz. Theranos, Inc., Litig.*,
308 F. Supp. 3d 1026 (D. Ariz. 2018) ......................................................................... 1

*Berson v. Applied Signal Technologies, Inc.*,
527 F.3d 982 (9th Cir. 2008) ............................................................................... 13, 14

*In re BofI Holding, Inc. Sec. Litig.*,
302 F. Supp. 3d 1128 (S.D. Cal. 2018) ...................................................................... 10

*Car Carriers, Inc. v. Ford Motor Co.*,
745 F.2d 1101 (7th Cir. 1984) ..................................................................................... 3

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.,
Inc.*,
856 F.3d 605 (9th Cir. 2017) ....................................................................................... 6

*City of Fort Lauderdale Gen. Employees' Ret. Sys. v. Edison Int'l*,
No. 18-55496, 2019 WL 6445432 (9th Cir. Nov. 29, 2019) ........................................ 9

*Cunico Corp. v. Custom Alloy Corp.*,
772 F. App'x 595 (9th Cir. 2019) ........................................................................... 2, 4

*In re CytRx Corp. Sec. Litig.*,
No. CV14-1956GHK(PJWX), 2015 WL 5031232 (C.D. Cal. July 13,
2015) .......................................................................................................................... 12

*In re Galena Biopharma, Inc. Sec. Litig.*,
117 F. Supp. 3d 1145 (D. Or. 2015) ...................................................................... 8, 14

*In re Impinj, Inc., Sec. Litig.*,
No. C18-5704RSL, 2019 WL 4917101 (W.D. Wash. Oct. 4, 2019) ................. 7, 10, 11

*Insight Pub. Sector, Inc. v. Proteam Sols., Inc.*,
No. 2:14-CV-2529-HRH, 2016 WL 6648167 (D. Ariz. Nov. 10, 2016) ....................... 2

*Lloyd v. CVB Financial Corp.*,
    811 F.3d 1200 (9th Cir. 2016) ................................................................................ 5

*Maverick Fund, L.D.C. v. First Solar, Inc.*,
    No. CV15-1156-PHX-DGC, 2018 WL 6181241 (D. Ariz. Nov. 27,
    2018) ...................................................................................................................... 5

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) ...................................................................... *passim*

*Mineworkers' Pension Scheme v. First Solar Inc.*,
    881 F.3d 750 (9th Cir. 2018) .................................................................................. 9

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. American
    West Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003) ............................................................................... 13

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
    380 F.3d 1226 (9th Cir. 2004) ............................................................................... 7

*Pub. Employees Ret. Sys. of Mississippi v. Qualcomm, Inc.*,
    773 F. App'x 987 (9th Cir. 2019) .......................................................................... 9

*Rabkin v. Lion Biotechnologies, Inc.*,
    No. 17-cv-02086-SI, 2018 WL 905862 (N.D. Cal. Feb. 15, 2018) ...................... 14

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014) ........................................................................ 4, 5, 6

*Rok v. Identiv, Inc.*,
    No. 15-CV-05775-CRB, 2018 WL 807147 (N.D. Cal. Feb. 9, 2018),
    *aff'd*, 716 F. App'x 663 (9th Cir. 2018) ............................................................... 9

*Rok v. Identiv, Inc.*,
    No. 15-CV-5775-CRB, 2017 WL 35496 (N.D. Cal. Jan. 4, 2017), *aff'd*,
    716 F. App'x 663 (9th Cir. 2018) ........................................................................ 11

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ............................................................................... 1

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ............................................................................... 12

*Sierp v. DeGreen Partners LP*,
    No. CV-16-00189-PHX-GMS, 2017 WL 67531 (D. Ariz. Jan. 6, 2017) ............. 11

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ............................................................................... 12

iii

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .................................................................................................. 2

*Webb v. Solarcity Corp.*,
    884 F.3d 844 (9th Cir. 2018) ........................................................................... 7, 8, 9, 13

*Weiss v. Amkor Tech., Inc.*,
    527 F. Supp. 2d 938 (D. Ariz. 2007) ............................................................................ 2

**Statutes**

15 U.S.C. § 78u-4(b) ............................................................................................ 1, 2, 6, 13

42 U.S.C. § 1983 ................................................................................................................ 1

**Other Authorities**

Federal Rule of Civil Procedure 8 .................................................................................. 1, 2

Federal Rule of Civil Procedure 9 .................................................................................. 1, 2

Federal Rule of Civil Procedure 12 ................................................................................... 1

Defendants respectfully submit this reply brief in support of their Motion to Dismiss (Dkt. 45) ("MTD") the Amended Complaint (Dkt. 36) ("AC") pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(6), and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, *et seq.*

## INTRODUCTION

Plaintiff's Response hinges on two emails from the City of San Diego taking issue with the Company's use of the word "contract" in a press release.  The two emails, however, do not contradict the existence of a purchase order at three locations within the City of San Diego and, thus, do not contradict Defendants' belief and public statements that the Company had what it considered to be a contract with the City.  In short, the Response fails to rebut any one of the several independent reasons for dismissal articulated in the Motion to Dismiss, including that the Amended Complaint fails to plead with particularity that any statement was materially false or misleading when made, fails to allege facts raising a strong inference of scienter, fails to allege adequately that Plaintiff's loss was caused by the alleged fraud, and fails to allege scheme liability.  For the reasons discussed below and in Defendants' Motion to Dismiss, the Amended Complaint should be dismissed for failure to state a claim.

## RESPONSE TO LEGAL STANDARD

The legal standard provided in Plaintiff's Response (Dkt. 47) ("Resp.") is incorrect. Resp. at 5.  Plaintiff cites two cases for the following proposition: "If there are two alternative explanations for the misconduct alleged, one advanced by the defendant and the other by the plaintiff, both of which are plausible, the complaint survives the motion [to dismiss]."  Resp. at 5 (citing *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011); *In re Ariz. Theranos, Inc., Litig.*, 308 F. Supp. 3d 1026, 1039 (D. Ariz. 2018)).  Although that standard may be correct in those cases, which involved claims under 42 U.S.C. § 1983 and Arizona consumer fraud statutes, that standard is not correct in this federal securities fraud case, which is brought under the Securities Exchange Act of 1934 and is subject to the statutory heightened pleading standards of the PSLRA, 15 U.S.C. § 78u-4.  The PSLRA's statutory

heightened pleading standards surpass not only the ordinary pleading requirements of Rule 8, but even the special fraud pleading requirements of Rule 9(b). *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); MTD at 5–6.

Plaintiff's Amended Complaint cannot survive under the PSLRA by merely raising a "plausible inference," as Plaintiff contends. Rather, Plaintiff must plead with "particularity," and must plead "facts" giving rise to a "strong inference" of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 515 U.S. at 314; 15 U.S.C. § 78u-4(b). "The Ninth Circuit recognizes that the PSLRA 'requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail' and that the PSLRA standard 'is not an easy standard to comply with—it is not intended to be—and the plaintiffs must be held to it.'" *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 944 (D. Ariz. 2007) (quoting *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)). Where, as here, Plaintiff fails to meet these stringent heightened pleading standards, the PSLRA directs that the court "shall . . . dismiss the complaint[.]" 15 U.S.C. § 78u-4(b)(3)(A).

## ARGUMENT

### I.    Plaintiff Fails to Plead Any False or Misleading Statement.

Plaintiff's Amended Complaint fails for a simple reason: a purchase order *is* legally a contract. *See* MTD at 7–8; *e.g.*, *Cunico Corp. v. Custom Alloy Corp.*, 772 F. App'x 595, 596–97 (9th Cir. 2019) (quote followed by purchase order is a contract); *Insight Pub. Sector, Inc. v. Proteam Sols., Inc.*, No. 2:14-CV-2529-HRH, 2016 WL 6648167, at *4 (D. Ariz. Nov. 10, 2016) (similar). As Taronis explained in its February 12 Form 8-K/A regarding its January 28 Form 8-K, it had "an approval and a written authorization from the City of San Diego's Fleet Operations to move forward with the procurement of gas and other hard goods from the Company at three different locations within the City." *See* AC ¶ 76 (citing Feb. 12 8-K/A). "The Company treats purchase orders as contracts and made its prior disclosure with that treatment in view[.]" *Id.* In other words, regardless of any disagreement with the City concerning use of the term "contract" in a public press release,

2

the January 28 announcement regarding a contract with the City of San Diego was entirely accurate.  And, as explained below, not one of the four arguments Plaintiff raises in the Response demonstrates otherwise.

*First*, Plaintiff argues the Company did not even have an "approval" and "written authorization" to move forward with the procurement of its product based on two City of San Diego emails appended to the Amended Complaint.  Resp. at 8–9 (citing AC Exs. A, B).  But the exhibits Plaintiff cites do not support its argument.  In those exhibits, two City employees (neither of whom is alleged to have been involved in procurement discussions with Taronis) stated, "the City . . . does NOT have a contract with this company," and "the City of San Diego does not have any procurement contract or any agreement with [Taronis] to purchase any of its products."  *See id.*  As Defendants explained, however, there are multiple locations within the City and "more than one division within the municipality." AC ¶ 76 (citing Feb. 12 8-K/A).  The fact that City employees take issue with use of the word "contract" does not contradict that three purchase orders existed.  Moreover, Plaintiff's citation to a list of contracts in excess of $25,000 on the City's website (Resp. at 10) does not undermine Defendants' public statements because there are no allegations in the Amended Complaint that any one of the three purchase orders was in excess of $25,000.[1]

Plaintiff's allegations may suggest the City disagreed with the use of the term "contract" in a public press release because, as Mr. Mahoney later explained, "there was no binding long-term obligation for [the City] to keep buying from [Taronis]" (AC Ex. D), but they fail to demonstrate Taronis lacked "approval and a written authorization to move forward with the procurement of gas and other hard goods . . . at three different locations within the City."[2]  AC ¶ 76 (citing Feb. 12 Form 8-K/A).

---

[1] Regardless, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984), which is precisely what Plaintiff attempts to do with these additional allegations based on citations to the City's website.

[2] Plaintiff's suggestion that the City's disagreement with the use of the term "contract"

***Second***, Plaintiff argues the Company did not have an "approval" and "written authorization" to move forward with the procurement of its product based on an abbreviated excerpt from Taronis's February 12 Form 8-K/A—namely, that Taronis did "not have any formal binding contracts, agreements or long-term purchase commitments with the City of San Diego." Resp. at 9 (citing Feb. 12 Form 8-K/A). In context, however, Defendants explained they did not have any such "formal binding contracts . . . *beyond the existing approval*," and further explained that they made their January 28 disclosure pursuant to their view that "purchase orders [are] contracts[.]" AC ¶ 76 (citing Feb. 12 Form 8-K/A) (emphasis added). Here, once again, Plaintiff has failed to demonstrate that the January 28th disclosure was false or misleading.

***Third***, recognizing the lack of support for its argument that Taronis lacked approval and written authorization, Plaintiff argues that "even if Taronis had received 'approval and written authorization to move forward' . . . an approval is not a contract." Resp. at 9. Ironically, however, the City of San Diego website page that Plaintiff cites in support of that assertion undermines its argument, because that page explains that "a solicitation, bid, proposal, or price quotation and the resulting Purchase Order shall be deemed a binding contract." Resp. at 9 (citation omitted). Moreover, regardless of the City's particular view as to what constitutes a "contract," Plaintiff cannot rebut the basic point of contract law that a purchase order is, in fact, a contract. *See Cunico*, 772 F. App'x at 596–97.

***Fourth***, Plaintiff cites inapposite cases that, unlike the Amended Complaint here, each involved particularized factual allegations demonstrating that the challenged statements were false or misleading when made. In *Reese v. Malone*, plaintiffs cited numerous particularized facts demonstrating defendants' statement that "the most recent inspection data [for oil pipelines] indicat[ed] that corrosion was occurring at a low and manageable rate" was false, including: "inspection data show[ing] objectively high

---

demonstrates there was "clearly no meeting of the minds" is wrong. Resp. at 9 n.3. Even if there was no meeting of the minds on the content of the press release, that allegation does not contradict the existence of three purchase orders.

4

corrosion rates and dramatically increased corrosion in certain places"; "a detailed report of [plaintiffs'] expert" opining the corrosion rate was "high" and "not manageable"; "internal documents" contradicting the company's public statement; and contradictory facts from the company's guilty plea and from United States Senate and House of Representatives investigation testimony. 747 F.3d 557, 567, 570 (9th Cir. 2014).  Similarly, in *Maverick Fund, L.D.C. v. First Solar, Inc.*, plaintiffs pled the falsity of statements regarding defendants' solar panel product with particularized allegations from numerous confidential witnesses (including a witness who "investigated significant cost overruns" and "reported directly to a senior finance manager," and a separate witness who "was specifically told to keep confidential any of the personally witnessed defects with the solar panels"), as well as a whistleblower complaint which was brought to the CFO and which complained that "the vice president of financial planning told a group of his subordinates what the publicly reported [cost per watt] number should be."  No. CV15-1156-PHX-DGC, 2018 WL 6181241, at **4–5 (D. Ariz. Nov. 27, 2018).  Finally, in *Lloyd v. CVB Financial Corp.*, plaintiff adequately pled falsity as to statements regarding loan repayment with allegations from confidential witnesses—including statements from the Chief Operating Officer of the company responsible for repaying the loan that were "specific in time, context, and details"—demonstrating that by the time the challenged statement was made defendants "had known for two months that there was a basis for serious doubts" about repayment.  811 F.3d 1200, 1208–09 (9th Cir. 2016).

In stark contrast to the above cases, Plaintiff here has alleged no particularized facts to show that Taronis did not, in fact, have purchase orders with three different locations within the City of San Diego.  All Plaintiff has alleged is emails from the City, but, as explained above, those emails simply do not contradict the existence of three purchase orders or Defendants' belief (and basic contract law) that the three purchase orders constituted a contract.  In sum, Plaintiff's Amended Complaint fails to plead that any challenged statement was false or misleading when made.

**II.**     **Plaintiff Fails to Adequately Plead a Strong Inference of Scienter.**

Defendants established that Plaintiff's alleged scienter theory was neither cogent nor compelling because Defendants had no need to increase the Company's stock price with a press release given that the planned reverse stock split would raise the stock price above that required by the NASDAQ listing requirements.  MTD at 11-18.  In the Response, Plaintiff abandons the alleged theory entirely and now relies on the new theory that scienter exists "because there was, quite simply, no contract."  Resp. at 13.  This conclusory theory should be rejected for four reasons.

*First*, there was a contract.  *Supra* Part I; MTD at 7–8.  Plaintiff's citation to City emails taking issue with Taronis's use of the term "contract" in a press release does not demonstrate Defendants lacked "approval" and "written authorization" to move forward with the procurement of Taronis's products.  Nor do those emails demonstrate that Taronis's characterization of a purchase order as a contract was inappropriate.

*Second*, Plaintiff contends that its bare assertion that "there was, quite simply, no contract" sufficiently pleads scienter under *Reese*.  Resp. at 13.  But in *Reese*, the defendant "bridged the scienter gap herself" by publicly admitting that she knew of the data alleged by plaintiffs that directly contradicted her public statements.  *Reese*, 747 F.3d at 572.  Here, Plaintiff has not alleged any data that directly contradicts Defendants' public statements and, moreover, Defendants have never admitted data exists to contradict their statements. Rather, Defendants have consistently maintained during and after the alleged Class Period that Taronis had purchase orders with three different locations within the City of San Diego and that Taronis considers purchase orders contracts.

The PSLRA requires Plaintiff to "state with particularity facts giving rise to a strong inference" of scienter, 15 U.S.C. § 78u-4(b)(2)(A), which is defined to mean "intent to deceive, manipulate, or defraud," *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 619 (9th Cir. 2017), or severe recklessness constituting "an *extreme* departure from the standards of ordinary care[,] which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the

6

actor must have been aware of it," *Webb v. Solarcity Corp.*, 884 F.3d 844, 851 (9th Cir. 2018) (citation omitted).   Under this standard, Plaintiff cannot simply assert that the absence of a contract as articulated by the City of San Diego suffices to show that Defendants acted with intent to deceive the investing public.  *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1068 (9th Cir. 2008).   Simply put, Plaintiff's conclusion that there was no contract does "not give rise to an inference of scienter that is at least as compelling as the inference of an honest mistake" that the purchase orders should be characterized as a contract in the press release.  *See Solarcity*, 884 F.3d at 856.

*Third*, Plaintiff's argument that Mr. Mahoney "continued to deceive investors" on the January 31 conference call "about the existence of the contract with the City" does not support Plaintiff's new theory.  Resp. at 13.[3]  Specifically, this argument provides no facts demonstrating Defendants did not have an "approval" and "written authorization" to move forward with the procurement of their products, much less that Defendants knew of the same.  Indeed, the fact that Mr. Mahoney continued to state in multiple calls and filings why Taronis believed a contract existed shows that the more compelling inference here is the innocent one—that Defendants believed the purchase orders constituted a contract.  *See Solarcity*, 884 F.3d at 855–58 (affirming dismissal where innocent inference was more

---

[3] Plaintiff cites factually inapposite cases involving allegations of contemporaneous, particularized facts supporting a strong inference of scienter.  *E.g.*, *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1228–34 (9th Cir. 2004) (plaintiffs adequately pled knowledge that statements regarding product and financial information were false where complaint included: (i) "specific admissions from the three top executive officers" concerning their involvement in key parts of the business; (ii) "specific allegations regarding large portions of [the company's] sales data" based on allegations from "an account manager," "a former vice president of finance," and a "staff consultant" (*i.e.*, confidential witnesses); (iii) allegations regarding "improper revenue accounting records" based on information derived from former employees and, "more importantly, the documents themselves"; and (iv) insider stock sales, where the CEO sold over 29 million shares for nearly $900 million (his first sales in five years) and the CFO sold one million shares at $32 per share, both just over one month before the alleged fraud was revealed); *In re Impinj, Inc., Sec. Litig.*, No. C18-5704RSL, 2019 WL 4917101 (W.D. Wash. Oct. 4, 2019) (scienter adequately pled based on confidential witness allegations, specific internal documents and discussions directly contradicting defendants' statements, and termination of employees who raised concerns regarding alleged fraud).

7

compelling, noting defendants "were accurate when speaking about" the subject in question).

**Fourth**, Plaintiff's citation to what it calls "post-Class Period misconduct" likewise fails to raise a strong inference of scienter.[4]  Plaintiff cites a "Risk Factor" in the Company's Form 10-K stating its stock price fell due to "uncontrollable market conditions," and Mr. Mahoney's statement in the August 2019 earnings call that Taronis "had a purchase order from three different departments from the City."  Resp. at 15–16. Plaintiff provides no particularized allegations demonstrating how these statements constitute "misconduct" or are probative of Defendants' contemporaneous knowledge that the January 28 disclosure was false.  *See Metzler*, 540 F.3d at 1068 (post-class period statements not probative of scienter).  Indeed, the post-Class Period statements are entirely consistent with statements Defendants made before this lawsuit was filed.  Both pre- and post-filing, Defendants maintained that (a) the stock price decline was the result of the reverse stock split (or market conditions) and (b) Taronis had a purchase order with the City of San Diego.  Defendants' consistent position – that is not contradicted by any particularized fact alleged in the Amended Complaint – weighs in favor of the more compelling innocent inference.

In sum, Plaintiff's "narrative of fraud is simply not as plausible as a nonfraudulent alternative." *Solarcity*, 884 F.3d at 858.  *Solarcity* provides a helpful example on this point. *See id.* (cited at MTD at 7, 11).  The plaintiff in *Solarcity* provided far more than Plaintiff here in the way of scienter allegations, including statements by eleven confidential

---

[4] Plaintiff cites *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1156, 1166 (D. Or. 2015), where the court credited the plaintiff's citation to the former CEO's "attempts to hide" an illicit "pump and dump" insider trading scheme.  The  *Galena* plaintiff detailed the CEO's attempts to "cover up the specifics of [a] paid promotional campaign and his personal sale of stock," and cited additional facts including company officers selling "all or nearly all of their personally-held [company] stock" and a Special Committee report (complete with exhibits, including internal documents) which concluded the CEO "likely violated securities laws, and lied to the Special Committee."  *Id.* at 1166. The specificity and nature of the allegations in *Galena* make it completely inapplicable to this case.

witnesses, an alleged motive to maintain an inflated price because "the company needed a successful IPO to generate badly needed cash," details concerning the "magnitude and duration of [alleged] GAAP violations," and a "core operations" allegation detailing the "dramatic" nature of the transaction in question. *See id.* at 854, 855–58. Nevertheless, the court affirmed dismissal because those allegations at best "paint a picture of a mismanaged organization in need of closer financial oversight that made a minute error at a critical stage in its development," which is not fraud under the securities laws. *See id.* at 856. Plaintiff's allegations in this case fall even shorter than the plaintiff's allegations in *Solarcity*, and the innocent inference here is even stronger than it was in that case. The Amended Complaint should be dismissed for failing to allege the requisite strong inference of scienter.

**III.    Plaintiff Fails to Plead Loss Causation Adequately.**

Defendants established in the Motion to Dismiss that the Amended Complaint fails to plead loss causation adequately because a stock price decline following Taronis's removal of the January 28 press release from its website shows only market speculation, which is not sufficient to allege loss causation under Ninth Circuit precedent. MTD at 18-19. As the Ninth Circuit explained in *Mineworkers' Pension Scheme v. First Solar Inc.*, where Plaintiff pleads "a causation theory based on market revelation of the fraud," the Court "evaluates whether plaintiffs have pleaded or proved the facts relevant to their theory." 881 F.3d 750, 754 (9th Cir. 2018) (per curiam) (citing *Metzler*, 540 F.3d at 1059); *Metzler*, 540 F.3d at 1063 ("[T]he complaint must allege that the practices that the plaintiff contends are fraudulent were revealed to the market and caused the resulting losses.").[5]

---

[5] Consistent with this instruction in *First Solar*, courts routinely require plaintiffs to plead facts in support of their market revelation theory where that is, in fact, the plaintiff's theory of loss causation. *See, e.g.*, *City of Fort Lauderdale Gen. Employees' Ret. Sys. v. Edison Int'l*, No. 18-55496, 2019 WL 6445432, at *1 (9th Cir. Nov. 29, 2019) (alleged corrective disclosures were "too opaque" and "at most . . . put investors on notice of a 'potential future disclosure of fraudulent conduct'") (quoting *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014) and citing *First Solar*, 881 F.3d at 753); *Pub. Employees Ret. Sys. of Mississippi v. Qualcomm, Inc.*, 773 F. App'x 987, 988 (9th Cir. 2019) (affirming dismissal where "Plaintiff has failed to allege the necessary 'causal connection' between the purported misrepresentations and the resulting loss"); *Rok v. Identiv, Inc.*, No. 15-CV-05775-CRB, 2018 WL 807147, at *8 (N.D. Cal. Feb. 9, 2018) (the "Court's analysis,"

9

Plaintiff contends this standard has been met, but Plaintiff is incorrect for three reasons.

**First**, Plaintiff asserts that the market learned of the alleged fraud through a "leaking" of the fraud. Resp. at 17–18; AC ¶¶ 73–75. Plaintiff suggests, with a citation to two "tweets," that the market inferred there was no contract from the Company's decision to take down the January 28 release from its website. Resp. at 17–18; AC ¶¶ 73–75. That unfounded speculation "is not a 'fact,'" but rather "an inference that [Plaintiff] believes is warranted from the facts that are alleged," and an inference that Defendants have demonstrated is not warranted (*supra* Part I-II; MTD at 9–10). *See Metzler*, 540 F.3d at 1064 ("So long as there is a drop in a stock's price, a plaintiff will always be able to contend that the market 'understood' a defendant's statement precipitating a loss as a coded message revealing the fraud. Enabling a plaintiff to proceed on such a theory would effectively resurrect what *Dura* discredited—that loss causation is established through an allegation that a stock was purchased at an inflated price.").

**Second**, Plaintiff asserts that the market learned of the fraud through the February 12 Form 8-K/A. Resp. at 17–18; AC ¶¶ 103-05. Plaintiff argues the February 12 release constituted a corrective disclosure that finally revealed the alleged fraud. Resp. at 17–18; AC ¶¶ 103-05. But the February 12 Form 8-K/A simply added context to the January 28 Form 8-K, explaining the Company had "approval" and "written authorization" and no "long-term" commitments from the City. *See* AC ¶ 76 (citing Feb. 12 Form 8-K/A). The February 12 Form 8-K/A was consistent with the January 28 Form 8-K, and, thus, the February 12 disclosure does not "reveal[]" any "fraud" to the market. *In re BofI Holding, Inc. Sec. Litig.*, 302 F. Supp. 3d 1128, 1148 (S.D. Cal. 2018) (disclosures "did not disclose, or confirm, the falsity" of any challenged statement).

**Third**, Plaintiff's cited cases are inapposite. In *Impinj*, plaintiff's loss causation allegations included a series of announcements revealing a reduction in revenues, each

---

which held plaintiff "failed to adequately plead the market revelation theory" of loss causation, "was consistent with, and is unchanged by, [*First Solar*]"), *aff'd*, 716 F. App'x 663, 664 (9th Cir. 2018).

followed by a drop in the company's stock price, and further followed by market commentators linking the decline in revenues to problems with the company's primary product, which was the subject of the fraud allegations. *Impinj*, 2019 WL 4917101, at *2, 6. Here, however, there are no such credible facts linking the removal of the January 28 press release to revelation of any alleged fraud. Plaintiff also cites *Sierp v. DeGreen Partners LP*, a diversity action involving Arizona state law securities fraud and negligence-based claims. No. CV-16-00189-PHX-GMS, 2017 WL 67531, at *12 (D. Ariz. Jan. 6, 2017). There was no occasion for the plaintiff to allege that fraud was revealed to the market in that case, which involved a private interaction between two individuals. *See id.* Finally, Plaintiff cites *In re Allied Nevada Gold Corp. Sec. Litig.*, 743 F. App'x 887, 888 (9th Cir. 2018), but in that case, the alleged corrective disclosure tied directly to the alleged false statements. *See* No. 3:14-cv-00175-LRH-WGC, 2017 WL 4172611, at *3, *13 (D. Nev. Sept. 20, 2017) (corrective disclosure announced increased production costs and operational defects, revealing allegedly concealed problems with business and operations). Here, however, there is no direct tie to the removal of the January 28 press release from Taronis's website to revelation of any alleged fraud.

In sum, Plaintiff fails to support its speculative loss causation theory. Instead, it manufactures a theory of fraud to capitalize on a decline in stock price that followed a reverse stock split. Because Plaintiff has failed to support its claim, the Court should not "indulge [Plaintiff's] unwarranted inferences in order to save [the Amended Complaint] from dismissal." *Metzler*, 540 F.3d at 1064–65 ("[T]he August 2 announcement contained a far more plausible reason for the resulting drop in Corinthian's stock price—the company failed to hit prior earnings estimates."); *Rok v. Identiv, Inc.*, No. 15-CV-5775-CRB, 2017 WL 35496, at *18 (N.D. Cal. Jan. 4, 2017) ("The SAC also fails to account for alternative explanations for the share price decreases in May 2015 . . . thereby failing to adequately allege the requisite causal connection."), *aff'd*, 716 F. App'x 663 (9th Cir. 2018).

IV.    **Plaintiff Fails to Adequately Plead Scheme Liability.**

Defendants established in the Motion to Dismiss that Defendants Dingess, Santilli,

11

Pollack, and Staunton should be dismissed for the additional reason that the Amended Complaint failed to allege any particularized allegations connecting these Defendants to the alleged fraud. MTD at 19-22. Plaintiff raises four arguments in the Response, none of which stave off dismissal of these Defendants as explained below.

*First*, Plaintiff asserts it has pled its scheme liability claim with particularity because "the Amended Complaint plausibly alleges that each of the Individual Defendants participated in the scheme to defraud, reviewed the false or misleading disclosures, approved their dissemination, and engaged . . . in a course of conduct to conceal the truth." Resp. at 19–20. As Defendants argued in the Motion to Dismiss, however, those conclusory assertions are just that—conclusory—and fail to provide any facts in support of the scheme liability claim. Plaintiff cannot satisfy the particularity requirement by lumping the Individual Defendants together and making generalized, boilerplate allegations that each was involved in a scheme to defraud. *See* MTD at 20–21 (citing, *e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007); *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 984 (9th Cir. 1999)).

*Second*, Plaintiff contends the particularity standard has been met, citing *In re CytRx Corp. Sec. Litig.*, No. CV14-1956GHK(PJWX), 2015 WL 5031232 (C.D. Cal. July 13, 2015). Resp. at 20. But that case, where the court held plaintiff adequately pled a scheme liability claim based on an alleged "pump and dump" stock promotion scheme, is not at all like the current case. In *CytRx*, plaintiff pled facts showing defendants hired third parties to publish "bullish" and misleading articles to drive up their stock price, "plan[ned] and edit[ed] well-timed article releases with targeted content to artificially inflate the value of company stock and raise revenue," "award[ed] themselves and members of [the Board] with massive amounts of perfectly-timed stock option grants," and sought to "cover[] up the Company's involvement" when the illicit scheme came to light through two whistleblowers. *See id.* at **2, 11–12. Whereas the *CytRx* plaintiff supplied numerous particularized facts in support of its "pump and dump" scheme liability claim, Plaintiff here has supplied none.

12

***Third***, Plaintiff contends it pled scienter with respect to the Individual Defendants for its scheme liability claim. But as Defendants argued in the Motion to Dismiss, Plaintiff's generic allegations concerning scheme liability are insufficient under the PSLRA. MTD at 21–22. Unable to remedy this deficiency, Plaintiff repeatedly argues it would be "absurd" to conclude the Individual Defendants did not act with scienter. Resp. at 20 ("It would be absurd to suggest that the Individual Defendants did not discuss the purported existence of Taronis's first major city contract[.]"); *id.* at 21 ("It would also be absurd to suggest that the Individual Defendants did not discuss" emails with the City and removal of the January Press Release); *id.* ("It would similarly be 'absurd' to suggest that no Audit Committee member discussed the 'contract' prior to the filing and public dissemination of the January 28 disclosures[.]"). These conclusory allegations are not facts, and merely serve to highlight the absence of any support for Plaintiff's theory. *See* MTD 21–22 (citing cases); *Solarcity*, 884 F.3d at 855–58 (failure to allege "facts" supporting inference that alleged accounting error was "so dramatic that it would be *absurd* to think [defendants] did not know that something was wrong").

Indeed, all of Plaintiff's cases are a far cry from this case. In *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. American West Holding Corp.*, for instance, the plaintiff argued the defendants knowingly sought to (and did) inflate the value of their stock by issuing false positive statements to the market before executing significant insider stock sales. 320 F.3d 920 (9th Cir. 2003). The plaintiff supported its theory of fraud with facts, including letters from the Federal Aviation Administration regarding noncompliance with policies, meetings with the FAA to discuss noncompliance, "a series of incident reports" regarding improper procedures, an "FAA report . . . discuss[ing] the results of its 'in-depth main base inspection' . . . cit[ing] faulty procedures and multiple violations," an increase in incident reports documenting "a failure, malfunction, or defect in an aircraft," and—ultimately—significant stock sales executed before these facts came to light and totaling over $67 million, including sales of 99% and 100% of the two outside director entities' holdings. *See id.* at 926, 928, 932–33. Similarly, in *Berson v. Applied Signal*

*Technologies, Inc.*, the plaintiff argued the defendants knowingly disclosed false and misleading revenue and "backlog" figures by failing to disclose "stop work" orders, *i.e.* orders for the defendant company to stop working on existing contracts. 527 F.3d 982 (9th Cir. 2008). The plaintiff supported its theory with facts, including allegations from "four confidential witnesses who worked for [the company] and who allegedly will testify to the existence and effect of the stop-work orders." *Id.* at 985. The witnesses alleged that one stop-work order "followed a 'series' of client meetings where 'management tried unsuccessfully to 'negotiate away' certain contract requirements," a separate order "caused the company to reassign '50-75 employees,' with the result that one of the company's facilities became a 'ghost town,'" and yet another order came with numerous "difficulties" making it "highly likely that defendants were aware of this customer's problems" as that customer "had previously canceled other large contracts." *Id.* at 988 n.5. These cases do not provide support for Plaintiff's scheme liability claim, but rather a helpful contrast revealing the absence of support in the Amended Complaint.

***Fourth***, contrary to Plaintiff's contention, Plaintiff does not "plead[] facts separate from those already alleged in the 10b-5(b) claim." Resp. at 22. The conclusory assertion that Defendants participated in the "dissemination of the false or misleading" disclosures and decided "to not timely issue a corrective disclosure" are not facts, but recitations of legal elements. *Id.* Plaintiff's cases, again, provide contrast rather than support. *See Rabkin v. Lion Biotechnologies, Inc.*, No. 17-cv-02086-SI, 2018 WL 905862, at *17 (N.D. Cal. Feb. 15, 2018) (scheme liability allegations included "conduct beyond [challenged] statements, including the hiring of promoters, planning and editing well-timed article releases with targeted content to artificially inflate the value of company stock and raise revenue, and covering up the Company's involvement") (citation omitted); *Galena*, 117 F. Supp. 3d at 1193–95 (similar).

## CONCLUSION

For the foregoing reasons and the reasons stated in Defendants' Motion to Dismiss, Plaintiff's Amended Complaint should be dismissed with prejudice.

Dated: December 24, 2019.

*s/ Laura Sixkiller*
Laura Sixkiller (State Bar No. 022014)
laura.sixkiller@us.dlapiper.com
**DLA PIPER LLP (US)**
2525 East Camelback Road, Suite 1000
Phoenix, Arizona 85016
Telephone:  (480) 606-5100
Facsimile:   (480) 606-5101

B. Warren Pope (admitted *pro hac vice*)
wpope@kslaw.com
Brian Barnes (admitted *pro hac vice*)
bbarnes@kslaw.com
**KING & SPALDING LLP**
1180 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone:  (404) 572-4600
Facsimile:  (404) 572-5100

Lisa Bugni (admitted *pro hac vice*)
lbugni@kslaw.com
**KING & SPALDING LLP**
101 Second Street, Suite 2300
San Francisco, California 94105
Telephone:  (415) 318-1200
Facsimile:  (415) 318-1300

*Attorneys for Defendants*

15

**CERTIFICATE OF SERVICE**

I hereby certify that on December 24, 2019, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and served electronically through the CM/ECF system to all counsel of record.

*s/ Laura Sixkiller*
Laura Sixkiller

16