Matthew M. Guiney (admitted *pro hac vice*)
guiney@whafh.com
Malcolm T. Brown (admitted *pro hac vice*)
brown@whafh.com
Kevin G. Cooper (admitted *pro hac vice*)
kcooper@whafh.com
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600

*Lead Counsel for Lead Plaintiff Kui Zhu*
*and the Proposed Class*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kui Zhu, on behalf himself and all others similarly situated, | No. CV-19-04529-PHX-GMS |
| Plaintiff, | **PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION** |
| v. | |
| Taronis Technologies, Inc., et al., | |
| Defendants. | |

**<u>TABLE OF CONTENTS</u>**

PRELIMINARY STATEMENT ................................................................................ 1

I.      THE SETTLEMENT WARRANTS FINAL APPROVAL ................................... 2

II.     PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ...... 4

        A.      Plaintiff and Plaintiff's Counsel Adequately Represented the Class ..................... 4

        B.      The Proposal Was Negotiated At Arm's Length ................................................. 5

        C.      The Relief Provided For the Class Is Adequate ................................................. 7

                1.      The Costs, Risks, and Delay of Trial and Appeal ...................................... 8

                2.      The Plan of Allocation is Fair and Reasonable ......................................... 9

                3.      The Reaction of Class Members to the Settlement .................................. 10

III.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE .......... 11

        A.      The Settlement Class is Sufficiently Numerous to Warrant Certification ........... 12

        B.      There are Substantial Common Questions of Law and Fact ............................... 13

        C.      Plaintiff's Claims Are Typical of Other Settlement Class Members ................... 13

        D.      Plaintiff and Plaintiff's Counsel Have Adequately Represented the Settlement
                Class .............................................................................................................. 14

        E.      The Predominance and Superiority Requirement Are Satisfied .......................... 14

IV.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ............... 15

V.      NOTICE TO THE CLASS SATISFIES DUE PROCESS .................................... 16

CONCLUSION ................................................................................................... 17

i

1

# <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3
**Cases**

*Amchem Prods., Inc. v. Windsor,*
4     521 U.S. 591 (1997)...............................................................................................11, 15

5
*Blackie v. Barrack,*
6     524 F.2d 891 (9th Cir. 1975). ...............................................................................12

7
*Cheng Jiangchen v. Rentech, Inc.,*
8     2019 U.S. Dist. LEXIS  180474
    (C.D. Cal. Oct. 10, 2019).......................................................................................8

9
*Gribble v. Cool Transports Inc.,* No. CV 06-04863 GAF (SHx),
10     2008 U.S. Dist. LEXIS 115560
    (C.D. Cal. Dec. 15, 2008)......................................................................................6
11

12
*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) .............................................................................12
13

14
*Hayes v. Magna Chip Semiconductor Corp.,*
    2016 U.S. Dist. LEXIS 162120
15     (N.D. Cal. Nov. 21, 2016). ...................................................................................17

16
*Hefler v. Wells Fargo & Co.,* No. 16-cv-05479-JST,
    2018 U.S. Dist. LEXIS 213045
17     (N.D. Cal. Dec. 18, 2018) ...................................................................................4, 8

18
*In re Am. Bank Note Holographics, Inc. Sec. Litig.,*
19     127 F. Supp. 2d 418 (S.D.N.Y. 2001). ................................................................10

20
*In re Banc of Cal. Sec. Litig.,* No. SACV 17-00118 AG (DFMx),
    2019 U.S. Dist. LEXIS 209386
21     (C.D. Cal. Dec. 4, 2019) ........................................................................................5

22
*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.,*
23     No. 17-md-02777-EMC,
    2019 U.S. Dist. LEXIS 75205
24     (N.D. Cal. May 3, 2019) .........................................................................................4

25
*In re Datatec Sys., Inc. Sec. Litig.,* No. 04-CV-525 (GEB),
26     2007 U.S. Dist. LEXIS 87428
    (D.N.J. Nov. 28, 2007) .........................................................................................16
27

28

*In re Excess Value Ins. Coverage Litig.*, No. M-21-84RMB, MDL-1339,
  2004 U.S. Dist. LEXIS 14822
  (S.D.N.Y. July 30, 2004) ................................................................. 5

*In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF,
  2019 U.S. Dist. LEXIS 121886
  (N.D. Cal. July 22, 2019) ............................................................... 4, 5

*In re Gen. Instrument Sec. Litig.*,
  209 F. Supp. 2d 423 (E.D. Pa. 2001) ............................................... 16

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ............................................................ 2

*In re M.L. Stern Overtime Litig.*, No. 07-CV-0018-BTM (JMA),
  2009 U.S. Dist. LEXIS 31650
  (S.D. Cal. Apr. 13, 2009) .................................................................. 3

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ............................................................ 7

*In re Omnivision Techs.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ...................................... 11, 15

*In re THQ, Inc. Sec. Litig.*, No. CV-00-1783AHM(EX),
  2002  U.S. Dist. LEXIS 7753
  (C.D. Cal. Mar. 22, 2002) ................................................................ 12

*In re Wells Fargo Collateral Prot. Ins. Litig.*, No. SAML 17-02797,
  2019 U.S. Dist. LEXIS 202087
  (C.D. Cal. Nov. 4, 2019) .................................................................. 10

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005). .............................................. 15

*In re Zynga Sec. Litig.*, No. 12-cv-04007JSC,
  2015 U.S. Dist. LEXIS 145728
  (N.D. Cal. Oct. 2015) ........................................................................ 8

*Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 FEH,
  2008 U.S. Dist. LEXIS 12208
  (N.D. Cal. Feb. 7, 2008) ................................................................... 12

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012). ............................................................ 3

*Louie v. Kaiser Found. Health Plan, Inc.*, No. 08cv0795 IEG RBB,
    2008 U.S. Dist. LEXIS 78314
    (S.D. Cal. Oct. 6, 2008) ............................................................................. 7

*Mauss v. NuVasive, Inc.*, No. 13cv2005JM(JLB),
    2018 U.S. Dist. LEXIS 206387
    (S.D. Cal. Dec. 6, 2018) ............................................................................. 8

*Morgan v. Childtime Childcare, Inc.*, No. SACV 17-01641 AG (KESx),
    2020 U.S. Dist. LEXIS 5644
    (C.D. Cal. Jan. 6, 2020) ........................................................................... 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .......................................................... 3, 6

*Officers for Justice v. Civil Serv. Comm'n of the City and County of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ................................................................. 2, 3

*Riker v. Gibbons*, No. 08-cv-0015-LRH-VPC,
    2010 U.S. Dist. LEXIS 120841
    (D. Nev. Oct. 28, 2010) ........................................................................... 15

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................... 2, 17

*Schneider v. Traweek*, No. CV 88-0905 RG (KX),
    1990  U.S. Dist. LEXIS 11596
    (C.D. Cal. July 31, 1990) ......................................................................... 12

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................... 12

*Weeks v. Kellogg Co.*, No. CV 09-0812(MMM)(RZx),
    2011 U.S. Dist. LEXIS 155472
    (C.D. Cal. Nov. 23, 2011) .......................................................................... 9

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ..................................................................... 5

*Wilson v. Venture Fin. Grp., Inc.*, 09-CV-6768-BHS,
    2011 U.S. Dist. LEXIS 9691
    (W.D. Wash. Jan. 24, 2011) ...................................................................... 5

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ........................................................... 12, 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Yamner v. Boich*, No. C-92-20597 RPA,
  1994 U.S. Dist. LEXIS 20849,
  (N.D. Cal. Sept. 15, 1994) ............................................................................ 12

*Young v. LG Chem Ltd.*,
  783 Fed. Appx. 727 (9th Cir. 2019) ............................................................... 2


**Statutes**
15 U.S.C. § 78u-4(a)(4) ...................................................................................... 9
15 U.S.C. § 78u-4(a)(7) .................................................................................... 17


**Other Authorities**
Manual for Complex Litigation ("MCL") §13.14, at 173 (4th ed. 2004) ................... 3

**Rules**
Fed. R. Civ. P. 23(a) ........................................................................................ 15
Fed. R. Civ. P. 23(a)(1) ................................................................................... 13
Fed. R. Civ. P. 23(a)(4) ................................................................................... 14
Fed. R. Civ. P. 23(b) ................................................................................. 12, 15
Fed. R. Civ. P. 23(b)(3) ................................................................................... 14
Fed. R. Civ. P. 23(e) ................................................................................... 1, 12
Fed. R. Civ. P. 23(e)(1)(B) .............................................................................. 17
Fed. R. Civ. P. 23(e)(2) ............................................................................ 3, 4, 5
Fed. R. Civ. P. 23(e)(2)(C)(i) ............................................................................ 8
Fed. R. Civ. P. 23(e)(2)(C)(ii) .......................................................................... 9

Lead Plaintiff Kui Zhu ("Plaintiff") hereby respectfully submits this unopposed Memorandum in support of the entry of the Final Approval Order.

**PRELIMINARY STATEMENT**

The Proposed Settlement of this securities class action (the "Proposed Settlement" or "Settlement") recovering $1,700,000 for the benefit of the Settlement Class[1] is an excellent result for this litigation. The Proposed Settlement was reached after over a year of contested litigation, which included, *inter alia*, investigation by Lead Plaintiff's counsel; full briefing and oral argument held upon Defendants' motion to dismiss; and the engagement of experts by both parties to evaluate the scope of the claims; engagement of Michelle Yoshida, Esq. as a mediator; an all-day mediation session with Ms. Yoshida on August 5, 2020, virtually, with parties spanning the United States.

Thus, the Proposed Settlement is the result of arm's-length negotiations conducted by experienced counsel, with the assistance of an experienced mediator, and represents a substantial recovery of the Settlement Class's estimated damages, constituting more than 100% of Defendants' purported damages model for the Class Period.

The Court previously preliminarily approved the Settlement, preliminarily certified the Class for purposes of effectuating the Settlement, and directed that notice be disseminated to potential members of the Settlement Class.  ECF No. 75.  Now, because notice has been directed to 15,936 Class members and published in accordance with the Preliminary Approval Order, and no Class member has come forth with any objection, the Court should proceed to final approval of the Settlement.

To grant final approval of the Settlement, this Court will evaluate whether it is "fair, reasonable, and adequate," Fed. R. Civ. P. 23(e), focusing on the adequacy of the Settlement Amount in consideration for the release of the claims in the Action. Here, the Settlement is fair, reasonable, and adequate. Plaintiff believes the case is strong, but is

---

[1] Unless otherwise defined, all capitalized terms have the same meaning as set forth in the Stipulation (ECF No. 67-1)

determined that executing the Settlement was fair and reasonable, and the amount adequate, given the risks inherent in litigation. Plaintiff recognizes and acknowledges the inherent problems of proof under, and possible defenses to, the securities law violations asserted in this Action, especially with respect to proof of falsity, loss causation, the maximum amount of recoverable damages available to the Settlement Class if Plaintiff prevails at trial, as well as the potential inability to enforce any judgment against a Company recently de-listed from the Nasdaq exchange and the expense and length of continued proceedings necessary to prosecute the Action against Taronis through trial and appeals. Rather than engaging in expensive, protracted litigation with no assurance of success, therefore, Plaintiff agreed to a resolution of this action as the best outcome for the Settlement Class.  The $1.7 million cash Settlement eliminates the risks of continued litigation and provides a beneficial cash recovery for the Settlement Class.

As set forth herein, the Court should grant Final Approval of the Proposed Settlement, certify the Settlement Class, and approve the Plan of Allocation.[2]

## I.   THE SETTLEMENT WARRANTS FINAL APPROVAL

Courts recognize that public policy strongly favors settlements to resolve disputes, "'"particularly where complex class action litigation is concerned.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019)[3]; *see also Young v. LG Chem Ltd.*, 783 Fed. Appx. 727, 737 (9th Cir. 2019) (same). Moreover, courts should defer to "the private consensual decision of the parties" to settle and advance the overriding public interest in settling and quieting litigation. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *Officers for Justice v. Civil Serv. Comm'n of the City and County of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution").

---

[2] An overview of the litigation and settlement was previously set forth in the memorandum in support of the motion for preliminary approval, and, consequently, not repeated here.  ECF No. 67 at 2-4.

[3] All internal citations and quotations omitted unless otherwise noted.

As part of the settlement process, Fed. R. Civ. P. 23(e) requires judicial approval for any settlement of a class action. Such approval involves a two-step process by which the Court first determines whether a proposed settlement deserves preliminary approval which directs notice to all class members who would be bound by the proposal, and then, after notice is given to class members, whether final approval is warranted. *In re M.L. Stern Overtime Litig.*, No. 07-CV-0018-BTM (JMA), 2009 U.S. Dist. LEXIS 31650, at *8-9 (S.D. Cal. Apr. 13, 2009); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); Manual for Complex Litigation ("MCL") §13.14, at 173 (4th ed. 2004). By this motion, Plaintiff requests that the Court take the second step in the approval process and grant final approval as the Settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2).

In evaluating whether settlements are fair, reasonable, and adequate, courts in the Ninth Circuit consider the following factors: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a government participant; and the reaction of the class members to the proposed settlement." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). Keeping in mind that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements," courts should not convert settlement approval into an inquiry on the merits. *Officers for Justice*, 688 F.2d at 625. Here, each of Rule 23(e)'s and the Ninth Circuit's factors weighs in favor of final approval of the Settlement.

Indeed, this Court's Preliminary Approval Order considered the Rule 23(e)(2) and Ninth Circuit factors in assessing the Settlement and found that it was fair, reasonable and adequate, subject to further consideration at the Final Approval Hearing. ECF No. 75 at 10 ¶4. The Court's conclusion on preliminary approval is equally true now as little, if anything, has changed between preliminary approval and final approval. *See In re*

*Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 U.S. Dist. LEXIS 75205, at *29 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now").

## II.     PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.     Plaintiff and Plaintiff's Counsel Adequately Represented the Class

Plaintiff and Plaintiff's Counsel have adequately represented the Class as required by Rule 23(e)(2)(A) by diligently prosecuting this Action and engaging in pre-discovery investigations that allowed for an efficient settlement of this litigation.  These vigorous efforts on behalf of the Class unquestionably satisfy the requirements of Rule 23(e)(2)(A). *See Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 U.S. Dist. LEXIS 213045, at *18 (N.D. Cal. Dec. 18, 2018) ("*Hefler*") (reiterating, in finding Rule 23(e)(2)(A) satisfied for purposes of finally approving settlement, that Class Counsel had vigorously prosecuted action through dispositive motion practice and mediation); *In re Extreme Networks, Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2019 U.S. Dist. LEXIS 121886, at *7 (N.D. Cal. July 22, 2019) ("*Extreme Networks*") (same).

Plaintiff's Counsel has litigated this case since its inception in the Middle District of Florida, filing the initiating complaint, and undertook significant pre-discovery investigation in order to supplement the factual allegations to overcome the heavy burden necessary for the motion to dismiss under the PSLRA.  These efforts resulted in an excellent recovery for the Class in light of the expense and length of continued proceedings necessary to prosecute the Action against Taronis through trial and appeals as well as the potential inability to enforce any judgment against a company de-listed from the Nasdaq exchange.

Plaintiff's Counsel is highly qualified and experienced in securities litigation.  *See* Declaration of Matthew M. Guiney in Support of Plaintiff's Unopposed Motion for (1) Final Approval of Class Action Settlement; and (2) Attorneys' Fees, Expenses, and Award to Plaintiff (hereafter, "Guiney Decl."), Ex. A (Wolf Haldenstein Firm Resume),

and actively pursued the claims of Taronis investors in this Court. Plaintiff and Plaintiff's Counsel stood ready to, and at all times did, advocate for the best interests of the Class, litigating through dispositive motions, engaging in an arms-length mediation with a respected mediator, and recovering more than 100% of Defendant's damages model for the claims asserted. Thus, Plaintiff and Plaintiff's Counsel satisfy Rule 23(e)(2)(A).

**B.      The Proposal Was Negotiated At Arm's Length**

Rule 23(e)(2)(B) asks whether a proposed settlement is procedurally adequate, *i.e.*, whether "the proposal was negotiated at arm's length." The use of an experienced mediator to reach the settlement is an "important factor" supporting a finding this requirement is satisfied. *See In re Banc of Cal. Sec. Litig.*, No. SACV 17-00118 AG (DFMx), 2019 U.S. Dist. LEXIS 209386, at *6 (C.D. Cal. Dec. 4, 2019); *Extreme Networks*, 2019 U.S. Dist. LEXIS 121886, at *23 (settlement procedurally fair where it was the product of "mediation sessions and follow-up communications supervised by an experienced mediator").

Indeed, there is an initial presumption that a proposed settlement is procedurally adequate as well as fair and reasonable when it is the result of arm's‑length negotiations. *See Wilson v. Venture Fin. Grp., Inc.*, 09-CV-6768-BHS, 2011 U.S. Dist. LEXIS 9691, at *5 (W.D. Wash. Jan. 24, 2011) (preliminarily approving settlement where it "was a product of arm's-length negotiations and does not appear to benefit those who participated in the negotiation at the expense of any other parties."); *see also Williams v. Vukovich*, 720 F.2d 909, 922‑23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); *In re Excess Value Ins. Coverage Litig.*, No. M-21-84RMB, MDL-1339, 2004 U.S. Dist. LEXIS 14822, at *34 (S.D.N.Y. July 30, 2004) (when "settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.'").

Here, the Proposed Settlement was reached only after meaningful arm's‑length negotiations, which were facilitated by a respected mediator, Ms. Yoshida. Moreover,

counsel for both sides have extensive experience in securities class action litigation and are thoroughly familiar with the factual and legal issues involved. The opinion of experienced counsel, as here, supporting the Proposed Settlement is entitled to considerable weight. *See Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF (SHx), 2008 U.S. Dist. LEXIS 115560, at *26 (C.D. Cal. Dec. 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (quoting *Nat'l Rural Telecomms.*, 221 F.R.D. at 528).

Moreover, prior to reaching the Proposed Settlement, Plaintiff and Plaintiff's Counsel conducted a thorough investigation of the claims asserted in the Action. Plaintiff's Counsel has, among other things, conducted a review of Taronis' public filings with the SEC, press releases issued by the Company, media, analyst, and news reports about the Company, and other publicly available data, including trading data relating to the price and trading volume of Taronis' publicly traded securities.  In addition, Plaintiff's Counsel conducted confidential interviews of pertinent non-parties and retained damages consultants that provided advice and research on issues relevant to the litigation and settlement of the Action. Plaintiff's Counsel thus has carefully evaluated the merits of this case. Moreover, while Plaintiff and Plaintiff's Counsel fully believe in the merits of the Action, the very real risk remained that some or all of Plaintiff's claims might not survive Defendants' likely opposition to class certification, or summary judgment attacks regarding, *inter alia*, falsity, scienter, loss causation, or damages. Even if the Complaint survived Defendants' opposition to class certification and eventual motion for summary judgment, continued prosecution of the action would be complex, expensive, and lengthy, with a more favorable outcome highly uncertain.  Moreover, the risk of collection of judgment significantly increased upon the Company's delisting of its shares from the Nasdaq stock exchange on April 30, 2020.

By contrast, entering into the Proposed Settlement now eliminates the very real risk that Plaintiff and the Settlement Class might receive a lesser (or zero) recovery. Thus, the Proposed Settlement represents an excellent resolution given the substantial

1    risks of expense and delay of continued litigation and the maximum potential recovery

2    the Settlement Class could have achieved had it ultimately prevailed, versus the certain

3    and immediate recovery for the Settlement Class.

4          Defendants similarly entered into the Proposed Settlement only upon having

5    aggressively litigated and meaningfully considered the risks of the claims against them.

6    In sum, based on their familiarity with the factual and legal issues and their meaningful

7    assessment of relative risks and costs of continued litigation, the Parties were able to

8    negotiate the Proposed Settlement. To be sure, there was no collusion among the Parties.[4]

9    *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). The

10   negotiations were at all times adversarial and at arm's-length, with the assistance of an

11   experienced mediator, and produced a result that the Parties believe to be in their

12   respective best interests.

13         **C.      The Relief Provided For the Class Is Adequate**

14         The $1,700,000 cash settlement is within the range of reasonableness under the

15   circumstances so as to warrant final approval of the Settlement. Here, Plaintiff estimates

16   that the recovery represents approximately 17% of the total maximum damages

17   potentially available in this Action under Plaintiff's damages model and more than 100%

18   of the maximum damages under Defendants' damages model, assuming that liability was

19   ultimately proven.  In light of these risks, this percentage recovery is an excellent result

20   and exceeds the range of other securities class action settlements with similar total

21   damage amounts. *See* Laarni T. Bulan & Laura E. Simmons, Securities Class Action

22   Settlements – 2019 Review and Analysis at 6, Figure 5 (Cornerstone Research 2020)

23   (median settlement as a percentage of estimated damages was 12.8% in 2019 for Rule

24   10b-5 cases involving under $25 million in damages), annexed to Guiney Decl. at Ex. D;

---

[4]  Nor is there any preferential treatment of Plaintiff or any other Class Member. *See Louie v. Kaiser Found. Health Plan, Inc.*, No. 08cv0795 IEG RBB, 2008 U.S. Dist. LEXIS 78314, at *16-19 (S.D. Cal. Oct. 6, 2008). The proposed Plan of Allocation provides formulas for calculating the recognized claim of each Settlement Class Member, based on each such person's purchases and sales of Taronis common stock.

*In re Zynga Sec. Litig.*, No. 12-cv-04007JSC, 2015 U.S. Dist. LEXIS 145728, at \*40 (N.D. Cal. Oct. 2015) (14% recovery "exceeds the typical recovery" in securities fraud class action settlements); *Cheng Jiangchen v. Rentech, Inc.*, 2019 U.S. Dist. LEXIS 180474, at \*29 (C.D. Cal. Oct. 10, 2019) ("A 10% recovery of estimated damages is a favorable outcome in light of the challenging nature of securities class action cases.").

### 1.    The Costs, Risks, and Delay of Trial and Appeal

In evaluating the adequacy of the relief, Rule 23(e)(2)(C)(i) directs the Court to look at the costs, risks, and delay of trial and appeal in conjunction with the \$1.7 million settlement which provides a significant and immediate benefit to the Class. *Hefler*, 2018 U.S. Dist. LEXIS 213045, at \*20-21. "'[S]ecurities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'" *Id*. at \*37; *Mauss v. NuVasive, Inc.*, No. 13cv2005JM(JLB), 2018 U.S. Dist. LEXIS 206387, at \*15-16 (S.D. Cal. Dec. 6, 2018) ("*NuVasive*") (noting that "[s]ecurities class actions are complex actions to litigate" and involve "a complex and highly risky trial and likely post-trial appeals and motion practice").  While Plaintiff remains confident in the ability to ultimately prove the Class' claims at trial, Plaintiff would be required to prove all elements of his claims to prevail, while Defendants need only succeed on one defense to potentially defeat the entire action.

Here, Defendants advanced several arguments disputing both liability and damages. For example, Defendants raised numerous challenges disputing the falsity of their alleged misstatements and vigorously disputed scienter. Defendants also challenged Plaintiff's theory of loss causation and damages, arguing that it does not match their liability allegations and so could not support a jury verdict in Plaintiff's favor. *See Zynga*, 2015 U.S. Dist. LEXIS 145728, at \*35 ("[I]n 'any securities litigation case, it is difficult for plaintiff to prove loss causation and damages at trial.'"). Defendants intended to proffer expert testimony that no damages could be properly attributed to the alleged fraud, and that even if the jury found some liability and damages, the maximum provable damages were less than 10% of the damages Plaintiff claimed.  These arguments and the

1    fact that Defendants engaged competing expert witnesses to testify in support of

2    Defendants' major defenses were substantial obstacles to Plaintiff's success at trial. *See,*

3    *e.g., Weeks v. Kellogg Co.*, No. CV 09-0812(MMM)(RZx), 2011 U.S. Dist. LEXIS

4    155472 , at *47-48 (C.D. Cal. Nov. 23, 2011) ("The fact that this issue, which is at the

5    heart of plaintiffs' case, would have been the subject of competing expert testimony

6    suggests that plaintiffs' ability to prove liability was somewhat unclear; this favors a

7    finding that the settlement is fair.").

8        Barring settlement, this case would require the expenditure of substantial

9    additional sums of money, with no guarantee that any additional benefit would be

10   provided to the Class. Even if Plaintiff succeeded at trial, Defendants would almost

11   certainly file an appeal – a process that could further extend the litigation for years and

12   risk reversal of the verdict in favor of Defendants. Such a process can be lengthy,

13   complex, and costly. Conversely, the settlement confers a substantial and immediate

14   benefit on the Class, and avoids the risks associated with obtaining a wholly speculative,

15   but potentially larger, judgment several years from now.  Moreover, should such a

16   judgment eventually be obtained, it is unclear on the collectability of such judgment

17   given Taronis' delisting from the Nasdaq stock exchange.

18       The Settlement balances the risks, costs and delay inherent in complex cases

19   evenly with respect to all parties. Given the risks of continued litigation and the time and

20   expense that would be incurred to prosecute the Action through trial, the $1.7 million

21   Settlement is a meaningful recovery that is in the Class's best interests

22                    2.    The Plan of Allocation is Fair and Reasonable

23       Similarly, Rule 23(e)(2)(c)(ii) directs the Court to look at the effectiveness of a

24   proposed method of distribution to class members, which herein is referred to as the Plan

25   of Allocation. The Plan for Allocation for distributing the proceeds of the Net Settlement

26   Fund (after the payment of attorneys' fees and expenses, award for Lead Plaintiff, costs

27   of administration, taxes, any payment under 15 U.S.C. §78u‑4(a)(4), and any other court-

28   approved payments) is described at length in the Notice of Proposed Settlement of Class

Action, Motion for Attorneys' Fees and Expenses, and Settlement Fairness Hearing (the "Notice"), attached to the Stipulation as Exhibit A-1 (ECF No. 67-3).  It was devised with the assistance of an experienced damages consultant, taking into account the price movement in Taronis stock during and just after the Settlement Class Period. Whether a member of the Settlement Class has sustained a loss that will entitle the Settlement Class Member to recover from the Settlement Fund will depend on the calculation of a "recognized loss" for that member.  The calculation of the "recognized loss" will depend on several factors, including (a) when each Settlement Class Member purchased the shares of Taronis, and (b) whether the Settlement Class Member sold such shares during or after the Settlement Class Period and, if so, when.

The proposed Plan of Allocation is based on Plaintiff's theory of the case and reflects Plaintiff's contention that the price of Taronis common stock was artificially inflated by false and misleading statements and material omissions made by Defendants during the Settlement Class Period.  According to the Plan of Allocation, each class member will be treated equitably relative to each other and there is no reason to doubt the fairness of the proposed Plan of Allocation. At the final approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by 'experienced and competent' class counsel." *In re Am. Bank Note Holographics, Inc. Sec. Litig.*, 127 F. Supp. 2d 418, 429‑30 (S.D.N.Y. 2001).

In light of the above considerations, the Plan of Allocation is fair and reasonable and as a whole, the Proposed Settlement is an excellent result for the Settlement Class. The Court should, therefore, grant final approval of the Proposed Settlement and approve the Plan of Allocation.

### 3.    The Reaction of Class Members to the Settlement

The reaction of the Class to the Settlement also supports approving the Settlement. *See In re Wells Fargo Collateral Prot. Ins. Litig.*, No. SAML 17-02797, 2019 U.S. Dist. LEXIS 202087, at *27-28 (C.D. Cal. Nov. 4, 2019) ("This small percentage [of opt outs and objections] shows a positive class reaction to the settlement agreement and further

supports a finding that the settlement is fair, reasonable, and adequate."); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("'[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.'"). 9,137 Postcard Notices were mailed to potential Class Members and nominees, and one nominee emailed 6,799 of their customers to notify them of the settlement with direct links to Long Notice and Claim Form and the Summary Notice was published in *Investor's Business Daily* and electronically via Globe Newswire. *See* Declaration of Sarah Evans at ¶¶7 & 9 (annexed to the Guiney Decl. as Ex. B and referred to herein as "Evans Decl"). The deadline to object to any aspect of the Settlement is February 12, 2021. To date, no objections have been received. *Id.*; *see also Morgan v. Childtime Childcare, Inc.*, No. SACV 17-01641 AG (KESx), 2020 U.S. Dist. LEXIS 5644, at *7 (C.D. Cal. Jan. 6, 2020) ("Lack of objection speaks volumes for a positive class reaction to the settlement."). To date, the lack of objections or requests for exclusion supports final approval.

## III.   CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

The Court preliminarily certified the Settlement Class for settlement purposes in its Preliminary Approval Order. ECF No. 75 at 9-10 ¶2. As previewed in Plaintiff's brief in support of preliminary approval of the Settlement (ECF No. 67), certification of the Settlement Class under Rule 23 is merited here. Nothing has changed since the Court issued the Preliminary Approval Order. Thus, the Court should certify the Settlement Class for settlement purposes.

This Action satisfies all the factors for certification of a class and, if the litigation were proceeding toward trial, class certification would be appropriate. Certainly, in the context of the Proposed Settlement, the certification of a Settlement Class is warranted.[5]

---

[5] Indeed, "[w]hether trial would present intractable management problems, [ ] is not a consideration when settlement-only certification is requested, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

The Ninth Circuit and numerous courts within the Ninth Circuit have held that class actions are generally favored in securities fraud actions. *Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976). "[T]he law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws." *In re THQ, Inc, Sec. Litig.*, No. CV‑00-1783AHM(EX), 2002  U.S. Dist. LEXIS 7753, at *8-9 (C.D. Cal. Mar. 22, 2002); *Schneider v. Traweek*, No. CV 88‑0905 RG (KX), 1990  U.S. Dist. LEXIS 11596, at *16 (C.D. Cal. July 31, 1990)); *see also Yamner v. Boich*, No. C-92‑20597 RPA, 1994 U.S. Dist. LEXIS 20849, at *6 (N.D. Cal. Sept. 15, 1994) ("Ninth Circuit favors a liberal use of class actions to enforce federal securities laws").

Under Fed. R. Civ. P. 23(a), a class may be certified if it is so numerous that joinder of all members is impracticable; there are questions of law and fact common to the class; the claims or defenses of the representative parties are typical of the claims or defenses of the class; and the representative parties will fairly and adequately protect the interests of the class. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). In addition, the court must find that at least one of the three conditions of Fed. R. Civ. P. 23(b) is satisfied. *Id.*   Under subsection (b)(3), the court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Id.*; *Jaffe v. Morgan Stanley & Co.*, No. C 06-3903 FEH, 2008 U.S. Dist. LEXIS 12208, at *10 (N.D. Cal. Feb. 7, 2008).[6]   This Action clearly satisfies each of the requirements for the certification of a settlement class.

### A.     The Settlement Class is Sufficiently Numerous to Warrant

---

[6]  "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *Hanlon v. Chrystler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *accord Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).

**Certification**

Rule 23(a)(1) requires the class to be so large that joinder of all members is impracticable. The number of purchasers of Taronis' common stock during the Settlement Class Period, and hence the number of members of the Settlement Class, number in the thousands. As of April 8, 2019 Taronis had over 24.2 million shares of common stock outstanding. ¶107. Additionally, the Settlement Class Members are located in numerous jurisdictions throughout the United States. Thus, a group this large and geographically diverse is too large and unwieldy to join in a single action.

**B.     There are Substantial Common Questions of Law and Fact**

A proposed settlement class has sufficient commonality where there are substantial questions of law and fact common to the class. *See Wolin,* 617 F.3d at 1172. Here, there are numerous questions of law and fact common to the Settlement Class. If the Action were to proceed, such common questions would include whether the Exchange Act was violated by Defendants' acts as alleged in the Complaint; whether the statements issued by Defendants to the investing public misrepresented material facts about the Company and its business relationship with the City of San Diego; and whether the gradual revelation of the truth about Defendants' alleged misrepresentations to the investing public resulted in a decline in the price of Taronis common stock. In the context of the Settlement Class, additional common questions include whether the Proposed Settlement is fair, reasonable, and adequate; and whether the Proposed Settlement should be approved. Thus, the Settlement Class should be approved.

**C.     Plaintiff's Claims Are Typical of Other Settlement Class Members**

The claims of the Plaintiff are typical of the claims of the other members of the Settlement Class. Like the other Settlement Class Members, Plaintiff purchased Taronis securities during the Settlement Class Period, at a time when Defendants' alleged misrepresentations had not been fully disclosed to the market.  Plaintiff alleges that Defendants' undisclosed misrepresentations resulted in artificial inflation of the price of the Taronis' common stock that Plaintiff purchased and that, upon disclosure of the

alleged misrepresentations, the value of the common stock purchased by Plaintiff declined. The other members of the Settlement Class were affected in the same ways. Similarly, the interest of Plaintiff in obtaining a fair, reasonable, and adequate settlement of the claims asserted is identical to the interests of the remaining Settlement Class Members.  Under the proposed Plan of Allocation, Lead Plaintiff will receive the same pro rata share of the Settlement Fund as the rest of the Settlement Class. Accordingly, the typicality requirement is met.

### D. Plaintiff and Plaintiff's Counsel Have Adequately Represented the Settlement Class

Plaintiff has prosecuted the Action, negotiated with Defendants, and obtained a Proposed Settlement representing a significant percentage of the losses allegedly suffered by members of the Settlement Class. Pursuant to the proposed Plan of Allocation, the estimated average recovery per share of common stock will be approximately $0.43 per share before the deduction of Court-approved fees and expenses and costs of notice and claims administration.  Moreover, Plaintiff has retained, and is represented by, highly qualified counsel with extensive experience in the prosecution of securities class actions. *See* Guiney Decl. at Ex. A; (Wolf Haldenstein's Firm Resume). Thus, Plaintiff has fairly and adequately protected and advanced the interests of the Settlement Class, and the requirements of Rule 23(a)(4) are met.

### E. The Predominance and Superiority Requirement Are Satisfied

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Here, the proposed Settlement Class satisfies the requirements of Rule 23(b) in that, as described above, the questions of law or fact common to the members of the Settlement Class clearly predominate over any questions affecting individual members. Moreover, damages suffered by members of the Settlement Class are not sufficient to make it economical to prosecute separate actions in order to recover individual losses

14

sustained as a result of Defendants' alleged violations of the securities laws. *Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action…A class action solves this problem…"). Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

As demonstrated by the foregoing, the proposed Settlement Class satisfies each of the requirements for the certification of a class pursuant to Fed. R. Civ. P. 23(a) and at least one of the factors enumerated in Rule 23(b). The certification of the Settlement Class is, therefore, warranted.

## IV.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

In the Preliminary Approval Order, the Court preliminarily approved the Notice and the Plan of Allocation outlined therein. Plaintiff now requests that the Court grant final approval of the Plan of Allocation for the purpose of administering the Settlement. Courts judge plans of allocation by the same metric as settlements as a whole: they must be "fair, reasonable and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. Practically speaking, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

The proposed Plan of Allocation has a reasonable, rational basis. It distributes the settlement proceeds on a pro rata basis, calculating a claimant's relative loss proximately caused by Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold Taronis securities. Plaintiff engaged a damages consultant to assist in developing a plan to allocate the Settlement proceeds among Claimants with the goal of reimbursing Settlement Class Members in a fair and reasonable manner. Guiney Decl. ¶20. *See Riker v. Gibbons*, No. 08-cv-0015-LRH-VPC, 2010 U.S. Dist. LEXIS 120841, at *16-17 (D. Nev. Oct. 28, 2010) ("Class counsel has consistently consulted with experts throughout this litigation, and based on

these consultations, has determined that the terms agreed upon in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims").

Because they tend to mirror the complaint's allegations in securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common." *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 U.S. Dist. LEXIS 87428, at *15 (D.N.J. Nov. 28, 2007); *see also In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (deeming plan of allocation "even handed" where "claimants are to be reimbursed on a pro rata basis for their recognized losses based largely on when they bought and sold their shares of General Instrument stock"). Here, each authorized claimant will receive a pro rata share of the Net Settlement Fund (comprised of cash, plus interest, less Court-approved fees and expenses) based on the claimant's recognized loss as calculated in accordance with the Plan of Allocation detailed in the Notice. Guiney Decl. ¶39.

There have been no objections and no exclusion requests from any potential Settlement Class Members, further supporting approval of the Plan of Allocation. Evans Decl. ¶¶12-13; Guiney Decl. ¶14. The Plan of Allocation fairly compensates Settlement Class Members and should be approved.

**V.     NOTICE TO THE CLASS SATISFIES DUE PROCESS**

Plaintiff has provided the Settlement Class with adequate notice of the Settlement, in the manner and form directed and preliminarily approved by the Court.  The Claims Administrator has caused notice to be sent to 15,936 potential Class Members and their nominees who could be identified with reasonable effort, from multiple sources. *See* Evans Decl., ¶7. In addition, the Court-approved Summary Notice was published in *Investors Business Daily*, and published electronically over Globe Newswire. *Id.*, ¶9. The Claims Administrator also provided all information regarding the Settlement online through the Settlement website. *Id.*, ¶11. This method of giving notice, previously approved by the Court, is appropriate because it directs notice in a "reasonable manner to

all class members who would be bound by the propos[ed judgment]." Fed. R. Civ. P. 23(e)(1)(B).

The Notice provided the necessary information for Class Members to make an informed decision regarding the proposed Settlement, relaying to Settlement Class Members, among other things: (1) the amount of the Settlement; (2) why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Lead Counsel would seek; (5) Plaintiff Counsel's contact information; (6) that Settlement Class Members could object to the Settlement or exclude themselves from the Settlement Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. *See* 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proof of Claim forms under the Plan as described in the Notice.

The Notice was sufficient because it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Rodriguez*, 563 F.3d at 962. The notice program here fairly apprised Class Members of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and complied with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process. *See, e.g., Hayes v. Magna Chip Semiconductor Corp.*, 2016 U.S. Dist. LEXIS 162120, at *15 (N.D. Cal. Nov. 21, 2016).

## **CONCLUSION**

Plaintiff respectfully requests that the Court (1) grant Final Approval of the Proposed Settlement, (2) certify the Settlement Class, and (3) approve the Plan of Allocation.

Dated: January 29, 2021

/s/ Matthew M. Guiney
Matthew M. Guiney (admitted *pro hac vice*)
guiney@whafh.com
Malcolm T. Brown (admitted *pro hac vice*)
brown@whafh.com
Kevin G. Cooper (admitted *pro hac vice*)
kcooper@whafh.com
WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 686-0114

*Lead Counsel for Lead Plaintiff Kui Zhu
and the Proposed Class*


JOHNSTON FISTEL LLP
Michael I. Fistel, Jr.
michaelf@johnsonfistel.com
40 Powder Springs Street
Marietta, GA 30064
Tel: (470) 632-6000
Fax: (770) 200-3101

*Additional Counsel for Lead Plaintiff Kui Zhu*

/810308

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 29, 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and served electronically through the CM/ECF system to all counsel of record.

/s/ Matthew M. Guiney

Matthew M. Guiney