Matthew M. Guiney (admitted *pro hac vice*)
guiney@whafh.com
Malcolm T. Brown (admitted *pro hac vice*)
brown@whafh.com
Kevin G. Cooper (admitted *pro hac vice*)
kcooper@whafh.com
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600

*Lead Counsel for Lead Plaintiff Kui Zhu
and the Proposed Class*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kui Zhu, on behalf himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>Taronis Technologies, Inc., et al.,<br><br>        Defendants. | No. CV-19-04529-PHX-GMS<br><br>**PLAINTIFF'S UNOPPOSED MOTION AND MEMORANDUM IN SUPPORT OF ATTORNEYS' FEES, EXPENSES, AND AWARD TO PLAINTIFF** |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

OVERVIEW OF THE LITIGATION ...................................................................................... 3

I.     THE COURT SHOULD AWARD ATTORNEYS' FEES OF
       25% OF THE COMMON FUND ................................................................................. 3

       A.     A Reasonable Percentage of the "Common Fund" Recovered
              Is an Appropriate Method of Awarding Attorneys' Fees ...................................... 4

              1.     Plaintiff's Counsel Achieved a Fair Adequate, and
                     Reasonable Result for the Settlement Class ................................................ 5

              2.     The Risks and Burdens Class Counsel Experienced and
                     Whether the Case Was Handled on a Contingency Basis ........................... 6

              3.     The Skill Required, the Complexity of the Issues, and
                     the Quality and Efficiency of the Work ...................................................... 7

              4.     The Contingent Nature of the Fee ................................................................ 9

              5.     Fee Awards in Similar Cases Further Support an Award of
                     25% of the Settlement Fund ...................................................................... 10

       B.     A Lodestar Crosscheck Shows the Requested Fee is Reasonable ....................... 11

       C.     The Reaction of the Settlement Class Supports the Requested Award ............... 14

II.    PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND
       WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ..................... 15

III.   PLAINTIFF'S AWARD SHOULD BE APPROVED ........................................... 16

IV.    CONCLUSION ........................................................................................................ 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ........................................................................................ 6

*Atlas v. Accredited Home Lenders Holding Co.*, No. 07-CV00488-H (CAB),
2009 U.S. Dist. LEXIS 103035
(S.D. Cal. Nov. 4, 2009) ............................................................................................... 5

*Blum v. Stenson*,
465 U.S. 886 (1984)............................................................................................. 4, 11, 12

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)....................................................................................................... 3

*Cheng Jiangchen v. Rentech, Inc.*,
2019 U.S. Dist. LEXIS 180474
(C.D. Cal. Oct. 10, 2019)............................................................................................... 6

*City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG,
2014 U.S. Dist. LEXIS 64517
(S.D.N.Y. May 9, 2014) ................................................................................................ 9

*Dennings v. Clearwire Corp.*, No. C 10-1859 JLR,
2013 U.S. Dist. LEXIS 64021
(W.D. Wash. May 3, 2013)..................................................................................... 15, 16

*Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ......................................................................................... 7

*Feller v. Transamerica Life Ins. Co.*, No. 16-CV-01378 CAS (GJSx),
2019 U.S. Dist. LEXIS 19440
(C.D. Cal. Feb. 6, 2019)............................................................................................... 13

*Fox v. Vice*,
563 U.S. 826 (2011)..................................................................................................... 12

*Good Morning to You Production Corp., v. Warner/Chappell Music, Inc.*,
13-cv-04460-GHK-MRW (C.D. Cal. Aug. 16, 2016)................................................... 8

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) ......................................................................................... 8

ii

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   No. 13-317, Brief for the United States as Amicus Curiae ............................................. 3

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ...................................................................................... 15

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)................................................................................................. 5

*In re Am. Apparel, Inc. S'holder Litig.*, No. 10-6352 MMM (JCGx),
   2014 U.S. Dist. LEXIS 184548
   (C.D. Cal. July 28, 2014) .................................................................................*passim*

*In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAx),
   2016 U.S. Dist. LEXIS 148577
   (C.D. Cal. Oct. 25, 2016)....................................................................................... 13

*In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT,
   2012 U.S. Dist. LEXIS 55622
   (D. Ariz. Apr. 20, 2012) .................................................................................. 12, 14

*In re BP P.L.C. Sec. Litig.*,
   852 F. Supp. 2d 767 (S.D. Tex. 2012)...................................................................... 6

*In re China Educ. All., Inc.*, No. 2010CV09239CASJCX,
   2013 U.S. Dist. LEXIS 198306
   (C.D. Cal. Mar. 11, 2013)...................................................................................... 10

*In re Diamond Foods, Inc., Sec. Litig.*, No. 11-5386 WHA,
   2014 U.S. Dist. LEXIS 3252
   (N.D. Cal. Jan. 10, 2014) ........................................................................................ 7

*In re Equity Funding Corp. Sec. Litig.*,
   438 F. Supp. 1303 (C.D. Cal. 1977) ....................................................................... 8

*In re Genworth Fin. Sec. Litig.*,
   210 F. Supp. 3d 837 (E.D. Va. 2016) .................................................................... 11

*In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCx),
   2005 U.S. Dist. LEXIS 13627
   (C.D. Cal. June 10, 2005) .................................................................................. 9, 14

*In re Heritage Bond Litig.*, No. 2-ML-1475-DT,
   2005 U.S. Dist. LEXIS 13555
   (C.D. Cal. June 10, 2005) ................................................................................ 10, 12

*In re HP Inkjet Printer Litig.*,
   716 F.3d 1173 (9th Cir. 2013) ................................................................................. 5

*In re Ikon Office Solutions*,
   194 F.R.D. 166 (E.D. Pa. 2000)................................................................................... 6

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007)....................................................................... 15

*In re LifeLock, Inc.*,
   2010 U.S. Dist. LEXIS 102612
   (D. Ariz. Aug. 25, 2010).............................................................................................. 12

*In re M.D.C. Holdings Sec. Litig.*, No. 89-90,
   1990 U.S. Dist. LEXIS 15488
   (S.D. Cal. Aug. 30, 1990) ............................................................................................ 11

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ....................................................................................... 16

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ....................................................................................... 14

*In re Metro. Sec. Litig.*, No. CV-04-025 FVS,
   2006 U.S. Dist. LEXIS 73001
   (E.D. Wash. Oct. 6, 2006) ........................................................................................... 15

*In re Nuvelo, Inc. Sec. Litig.*, No. C 07-04056 CRB,
   2011 U.S. Dist. LEXIS 72260
   (N.D. Cal. July 6, 2011)............................................................................................... 10

*In re Omnivision Techs.*,
   559 F. Supp. 2d 1036 (C.D. Cal. 2007) .............................................................. 4, 6, 10

*In re Pac. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ........................................................................................... 4

*In re Regulus Therapeutics Sec. Litig.*, No. 17-cv-182 BTM RBB,
   2020 U.S. Dist. LEXIS 202787
   (S.D. Cal. Oct. 29, 2020) ............................................................................................. 17

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ........................................................................................... 5

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007)............................................................................. 12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ...................................................................................... 3, 9

*In re Zynga Sec. Litig.*, No. 12-cv-04007-JSC,
   2015 U.S. Dist.  LEXIS 145728
   (N.D. Cal. Oct. 2015)............................................................................................5

*Knight v. Red Door Salons, Inc.*, No. 08-01520-SC,
   2009 U.S. Dist. LEXIS 11149
   (N.D. Cal. Feb. 2, 2009) ........................................................................................7

*Ko v. Natura Pet Prods.,* C 09-021619-SBA,
   2012 U.S. Dist. LEXIS 128615
   (N.D. Cal. Sept. 10, 2012) ....................................................................................17

*Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC (MLGx),
   2014 U.S. Dist. LEXIS 63312
   (C.D. Cal. May 6, 2014) .......................................................................................16

*Parkinson v. Hyundai Motor Am.*,
   796 F. Supp. 2d 1160 (C.D. Cal. 2010) ................................................................12

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ..................................................................................4

*Pointer v. Bank of Am., N.A.*, No. 14-cv-00525,
   2016 U.S. Dist. LEXIS 176930
   (E.D. Cal. Dec. 21, 2016) ....................................................................................14

*Rieckborn v. Velti PLC*, No. 13-cv-03889-WHO,
   2015 U.S. Dist. LEXIS 13542
   (N.D. Cal. Feb. 3, 2015) .....................................................................................7, 8

*Robbins v. Koger Properties, Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ..............................................................................9

*Roberti v. OSI Sys., Inc.*, No. CV-13-09174 MWF (MRW),
   2015 U.S. Dist. LEXIS 164312
   (C.D. Cal. Dec. 8, 2015) ......................................................................................13

*Rodman v. Safeway Inc.*, No. 11-CV-03003-JST,
   2018 U.S. Dist. LEXIS 143867
   (N.D. Cal. Aug. 23, 2018) ......................................................................................4

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009). ..............................................................................16

*Roe v. Frito-Lay, Inc.*, No 14-cv-00751,
   2017 U.S. Dist. LEXIS 53902
   (N.D. Cal. Apr. 7, 2017) ......................................................................................17

*Romero v. Producers Dairy Foods, Inc.*, No. 1:05CV0484 DLB,
    2007 U.S. Dist. LEXIS 86270
    (E.D. Cal. Nov. 14, 2007) ...................................................................................... 10

*Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM),
    2010 U.S. Dist. LEXIS 53416
    (S.D. Cal. June 1, 2010) ........................................................................................ 10

*Smilovits v. First Solar Incorporated, et al.*,
    Case No. 12-cv-00555-DGC (D. Ariz.) .................................................................. 13

*Spann v. J.C. Penney Corp.*,
    211 F. Supp. 3d 1244 (C.D. Cal. 2016) ................................................................ 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................................................ 3

*Union Asset Mgmt. Holding A.G. v. Dell Inc.*,
    669 F.3d 632 (5th Cir. 2012) ................................................................................... 5

*Vincent v. Hughes Air West*,
    557 F.2d 759 (9th Cir. 1977) ................................................................................ 15

*Vizcaino v. Microsoft Corp.*,
    142 F. Supp. 2d 1299 ............................................................................................. 4

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .................................................................... 4, 11, 13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) .............................................................................................. 16

*Willner v. Manpower Inc.*, No. 11-cv-02846,
    2015 U.S. Dist. LEXIS 80697
    (N.D. Cal. June 22, 2015) ....................................................................................... 7

*Woburn Ret. Sys. v. Salix Pharms., Ltd.,* 14-cv-8925 (KMW),
    2017 U.S. Dist. LEXIS 132515
    (S.D.N.Y. Aug. 18, 2017) ...................................................................................... 12

**Statutes**

15 U.S.C. § 78u-4(a)(6) ............................................................................................... 5

Lead Plaintiff Kui Zhu ("Plaintiff") hereby respectfully submits this Memorandum in support of the motion for attorneys' fees, reimbursement of expenses, and a service award for Plaintiff.  Defendants do not oppose the instant motion.[1]

## PRELIMINARY STATEMENT

The Proposed Settlement of this securities class action (the "Proposed Settlement" or "Settlement") recovering $1,700,000 for the benefit of the Settlement Class[2] is an excellent result for this litigation. The Proposed Settlement was reached after over a year of contested litigation, which included, *inter alia*, the comprehensive investigation by Lead Plaintiff's counsel ("Plaintiff's Counsel") prior to filing the initial complaint and Amended Class Action Complaint; substantial efforts by all Parties in the full briefing and oral argument held upon Defendants' motion to dismiss; and the engagement of experts by both parties to evaluate the scope of the claims.  Indeed, Plaintiff, through Plaintiff's Counsel, was able to obtain more than 100% of Defendant's estimate of damages for the Class Period.

Having achieved this guaranteed cash recovery for the Settlement Class, Plaintiff's Counsel seek attorneys' fees of 25% of the settlement ($425,000), reimbursement of expenses of $30,303.42, and an award to Plaintiff of $2,600 to be paid from the settlement.

Litigants who create a common fund for the benefit of a class are entitled to an award of attorneys' fees and reimbursement of expenses from the common fund. In the Ninth Circuit, courts typically determine attorneys' fees as a percentage of the common fund. The main factors courts consider in setting the percentage award are the quality of the result, the risk undertaken, and the settlement class's reaction. Courts also crosscheck

---

[1] Should any objection by a Class member be received by February 12, 2021, Plaintiff will respond on February 26, 2021 in accordance with this Court's November 23, 2020 Order Granting Preliminary Approval (ECF No. 75).

[2] Unless otherwise defined, all capitalized terms have the same meaning as set forth in the Stipulation (ECF No. 67-1)

the award against the time and effort counsel expended. Here, each of these metrics weigh in favor of awarding Lead Counsel attorneys' fees of 25% of the Settlement Amount.

The Parties reached the Settlement only after arm's-length negotiations and a mediator's proposal. The arm's-length negotiations resulted in the favorable Settlement for the Settlement Class, particularly in light of several obstacles Plaintiff faced, including: the inherent problems of proof under, and possible defenses to, the securities law violations asserted in this Action, especially with respect to proof of falsity, loss causation, the maximum amount of recoverable damages available to the Settlement Class if Plaintiff prevailed at trial, as well as the potential inability to enforce any judgment against a Company de-listed from the Nasdaq exchange and the expense and length of continued proceedings necessary to prosecute the Action against Taronis through trial and appeals. Despite the risks, however, Plaintiff's Counsel was able to obtain this fair, adequate, and reasonable recovery for the Settlement Class.

The Settlement Class approves of Lead Counsel's work. Objections and requests for exclusion are not due until February 12, 2021, but to date no Settlement Class Member has objected to the fee request, or any aspect of the Settlement, and no Settlement Class Member has requested exclusion from the Settlement. *See* Evans Decl. ¶¶12-13; Guiney Decl. ¶14.

Plaintiff's Counsel also seeks reimbursement of out-of-pocket litigation expenses incurred in connection with the prosecution of this action in the amount of $30,303.42. These expenses, including court filing fees, expert fees, travel expenses and administrative expenses, were reasonable and necessary for the successful prosecution of the Action.

Finally, Plaintiff seeks an award of $2,600 for his time spent in carrying out his obligations in the Action. The award of $2,600 is reasonable in light of the time Plaintiff has spent in connection with this Action on behalf of investors, and in line with awards granted in similar matters.

2

**OVERVIEW OF THE LITIGATION**

A summary of Plaintiff's allegations and the procedural history of this Action are set forth in the Final Approval Brief at 3-4, filed concurrently herewith. For brevity, it is incorporated by reference and not repeated here.

**I.    THE COURT SHOULD AWARD ATTORNEYS' FEES OF 25% OF THE COMMON FUND**

For its efforts in creating a common fund for the benefit of the Class, Plaintiff's Counsel seeks an award of reasonable attorneys' fees and expenses. "[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). This allows the cost of litigation to be spread proportionately among the beneficiaries and provides an incentive for attorneys to pursue cases when the prospect of compensation is uncertain and remote in time.  Indeed, the purpose of this doctrine is to avoid unjust enrichment. "[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

Reasonable fee awards are necessary in securities class actions. The Supreme Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought [] by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *Halliburton Co. v. Erica P. John Fund, Inc.*, No. 13-317, Brief for the United States as Amicus Curiae Supporting Respondent, at 1-2. *Tellabs* and *Halliburton* were both class actions alleging securities fraud. Attorneys' fee awards were necessary to provide incentives for private lawyers to file those actions, and one is necessary here for the same reasons.

**A.      A Reasonable Percentage of the "Common Fund" Recovered Is an Appropriate Method of Awarding Attorneys' Fees**

Under the "common fund doctrine" a reasonable fee may be based on "a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). And while this Court has discretion to set the percentage of the common fund to award as attorneys' fees, 25% is a "starting point." *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48; 1050, n.5 (9th Cir. 2002) (affirming 28% fee, representing 3.65 multiplier, disfavoring lodestar method for incentivizing lawyers to generate more hours and not to settle early).[3] This Court may adjust the percentage "to account for any unusual circumstances involved in this case." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Here, Plaintiff's Counsel requests the benchmark 25%.[4]

Factors that courts use to determine whether the requested percentage is fair and reasonable include: (1) the results achieved; (2) the risk and complexity of the litigation; (3) the skill required; (4) the quality of work performed; (5) the contingent nature of the fee and the financial burden; (6) awards made in similar cases; (7) the reaction of the class; and (8) the lodestar cross-check. *See Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1306; *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1046 (C.D. Cal. 2007). Of course, "[t]he relative degree of importance to be attached to any particular factor will depend upon ... the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Atlas v. Accredited Home Lenders Holding Co.*, No. 07-CV00488-H (CAB), 2009 U.S. Dist. LEXIS 103035,

---

[3] The Ninth Circuit has established a benchmark in common fund cases of 25%, which the court may adjust upwards or downwards for special circumstances. *In re Pac. Enterprises Sec. Litig.,* 47 F.3d 373, 379 (9th Cir. 1995).

[4] Courts tend to award higher fee percentages in smaller settlements. *See Rodman v. Safeway Inc.,* No. 11-CV-03003-JST, 2018 U.S. Dist. LEXIS 143867, at *14 (N.D. Cal. Aug. 23, 2018) (awarding 28%, discussing studies showing decrease in fee percentages as settlement amount increases).

4

at *11 (S.D. Cal. Nov. 4, 2009). Here, each factor supports awarding attorneys' fees of 25% of the common fund.[5]

1.   Plaintiff's Counsel Achieved a Fair Adequate, and Reasonable Result for the Settlement Class

Courts have consistently recognized that the ultimate result achieved is a major factor to be considered in making a fee award. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (tethering fee award "to the value of the class recovery").

The Settlement value, totaling $1.7 million in cash, plus interest, constitutes approximately 17% of Plaintiff's estimated damages model and over 100% of Defendants' estimated damages model.  Had Plaintiff continued to litigate, Plaintiff would have pursued the most aggressive damages approach, which relied on a difficult legal theory based on multi-day loss causation and the gradual leakage of news, as opposed to a concrete single-day corrective disclosure. Guiney Decl. ¶19.  As a percentage of the total estimated damages, the Settlement Amount is above the median percentage of investor losses recovered recovery level in securities class action settlements. *See* Laarni T. Bulan & Laura E. Simmons, Securities Class Action Settlements – 2019 Review and Analysis at 6, Figure 5 (Cornerstone Research 2020) (median settlement as a percentage of estimated damages was 12.8% in 2019 for Rule 10b-5 cases involving under $25 million in damages), annexed to Guiney Decl. at Ex. D; *In re Zynga Sec. Litig.*, No. 12-cv-04007-JSC, 2015 U.S. Dist.  LEXIS 145728, at *40 (N.D. Cal. Oct. 2015) (14% recovery "exceeds the typical recovery" in securities fraud

---

[5] Indeed, the PSLRA provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6). "Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation." *Union Asset Mgmt. Holding A.G. v. Dell Inc.*, 669 F.3d 632, 643 (5th Cir. 2012); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

5

class action settlements); *Cheng Jiangchen v. Rentech, Inc.*, 2019 U.S. Dist. LEXIS 180474, at \*29 (C.D. Cal. Oct. 10, 2019) ("A 10% recovery of estimated damages is a favorable outcome in light of the challenging nature of securities class action cases."). The recovery here is in line with—and exceeds—the median percentage of recovery for cases of similar size cases.

Moreover, the collectability of any judgment exceeding the amount recovered in this settlement is uncertain at best given Taronis' delisting from the Nasdaq stock exchange as well insurance coverage issues that made any higher recovery highly speculative.

For these reasons, the achievement of a substantial recovery for the Class weighs in favor of awarding Plaintiff's Counsel's fee.

> 2.    The Risks and Burdens Class Counsel Experienced and Whether the Case Was Handled on a Contingency Basis

This case had and still has significant risk to the Class and its counsel. These potential pitfalls are described in Plaintiff's motion for final approval. But Plaintiff has already surmounted some obstacles that made this case exceptionally risky.

First, the PSLRA imposes formidable pleading burdens. *In re BP P.L.C. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading."); *see also In re Ikon Office Solutions*, 194 F.R.D. 166, 194-95 (E.D. Pa. 2000) (taking into account pleading burdens imposed by PSLRA in awarding attorneys' fees).  Indeed, "[t]o be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009). For these reasons, among others, fee awards in securities class actions commonly meet or exceed the 25% benchmark. *Omnivision*, 559 F. Supp. 2d at 1047.

6

Second, Defendants would not have been able to pay a significant judgment. Guiney Decl., ¶15. This collectability risks supports a higher award. *Rieckborn v. Velti PLC*, No. 13-cv-03889-WHO, 2015 U.S. Dist. LEXIS 13542, at *28 (N.D. Cal. Feb. 3, 2015) (defendant's precarious financial condition justified risk enhancement); *In re Diamond Foods, Inc., Sec. Litig.*, No. 11-5386 WHA, 2014 U.S. Dist. LEXIS 3252, at *8-9 (N.D. Cal. Jan. 10, 2014) (same).

Third, Plaintiff's Counsel undertook this case on a wholly contingent basis, with no client paying hourly fees. *See Willner v. Manpower Inc.*, No. 11-cv-02846, 2015 U.S. Dist. LEXIS 80697, at *9-11, 18-19 (N.D. Cal. June 22, 2015) (30%). Counsel have spent 619.3 hours thus far and not been paid for their efforts. Guiney Decl., ¶¶34-35. Here, the risk was not just that the case would be dismissed. When a law firm takes on a case on contingency, it incurs the obligation to continue with representation (including through appeals) even if it becomes clear that the case will never be profitable. Plaintiff's Counsel risked that it would not be able to secure a substantial settlement until the eve of trial, or would spend thousands of hours of time and hundreds of thousands of dollars in litigation costs taking this case through trial (and appeals) to obtain a judgment no better than the Settlement achieved today.  These risk factors support the fee request.

### 3. The Skill Required, the Complexity of the Issues, and the Quality and Efficiency of the Work

Plaintiff's Counsel has extensive experience in securities class actions. The Action was prosecuted efficiently and with skill. The "prosecution and management of a complex national class action requires unique legal skills and abilities." *Knight v. Red Door Salons, Inc.*, No. 08-01520-SC, 2009 U.S. Dist. LEXIS 11149, at *16 (N.D. Cal. Feb. 2, 2009). The standing and prior experience of Plaintiff's Counsel are relevant in determining fair compensation. *See, e.g., Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).

Plaintiff's Counsel possesses those skills as recognized by Court around the country. Guiney Decl. at Ex. A (Wolf Haldenstein Firm Resume). "Not all, perhaps even

most, plaintiffs' class counsel could have litigated this case as successfully as did [Wolf Haldenstein] against such a fierce and exceptionally accomplished opponent." *Good Morning to You Production Corp., et al., v. Warner/Chappell Music, Inc., et al.*, 13-cv-04460-GHK-MRW, Dkt. No. 370 (C.D. Cal. Aug. 16, 2016). Indeed, it is particularly important to reward attorneys with skill and standing for pursuing such cases as "the stated goal in percentage fee-award cases [is] 'ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation.'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).

The quality of opposing counsel is also important in evaluating the quality of Plaintiff's Counsel's work. *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly"). Plaintiff was opposed in this litigation by King & Spalding LLP one of the world's premier law firms with an exemplary securities practice. They staffed the case with talented and experienced lawyers and advocated for their clients. Guiney Decl., ¶25. That Plaintiff's Counsel achieved a favorable settlement in the face of such formidable opposition weighs in favor of the requested fee.

Further, Plaintiff's Counsel litigated this Action efficiently. The lodestar of $309,271.50 to take this case through the motion to dismiss, pre-discovery investigation with confidential witnesses, and mediation, is lower than many other cases arising out of the PSLRA that did not even proceed beyond the pleadings. *In re Am. Apparel, Inc. S'holder Litig.*, No. 10-6352 MMM (JCGx), 2014 U.S. Dist. LEXIS 184548, at *86-87 (C.D. Cal. July 28, 2014) (lodestar of $2.0 million for case that settled before discovery began); *Rieckborn*, 2015 U.S. Dist. LEXIS 13542, at **74-78 (lodestar of $1.9 million before significant motion practice).

The skill required, complexity, and efficiency support the fee request.

####        4.        The Contingent Nature of the Fee

The risk of receiving little or no recovery is a major factor in awarding attorneys' fees. *See WPPSS*, 19 F.3d at 1299; *In re Heritage Bond Litig.*, No. 02-ML-1475-DT (RCx), 2005 U.S. Dist. LEXIS 13627, at *44 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award.").

Contingency fee risk is not illusory. In many cases, plaintiffs' attorneys invest thousands of hours and receive no remuneration whatsoever. There are numerous class actions in which plaintiffs' counsel expend thousands of hours, and yet receive no remuneration whatsoever despite their diligence and expertise. Since the PSLRA was enacted, a high percentage of securities cases have been dismissed at the pleading stage. The risks do not end at the motion to dismiss stage. In fact, even when a plaintiff is successful at trial, payment is not guaranteed. *See Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant). The risks in this case were no different. Plaintiff's Counsel's fee was entirely contingent, so the only certainty was that there would be no fee without a successful result and that such a result would only be realized after significant amounts of time, effort and expense had been expended. *See* Guiney Decl., ¶¶37, 42. Plaintiff's Counsel risked non-payment of 619.3 hours of professional time worth $309,271.50, as well as cash expenses of over $30,303.42, for over a year to bring this case to a successful conclusion. *See* Guiney Decl. (summarizing Plaintiff's Counsel's lodestar and expenses in further detail). "This type of substantial outlay, when there is a risk that no money will be recovered, further supports the award of the requested fees." *Am. Apparel*, 2014 U.S. Dist. LEXIS 184548, at *73; *see also City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 U.S. Dist. LEXIS 64517, at *41 (S.D.N.Y. May 9, 2014) ("the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis").

5.    Fee Awards in Similar Cases Further Support an Award of 25% of the Settlement Fund

"[I]n most common fund cases, the award exceeds [the] benchmark." *Omnivision*, 559 F. Supp. 2d at 1047. "This is particularly true in securities class actions." *Am. Apparel*, 2014 U.S. Dist. LEXIS 184548, at *75; *see also Romero v. Producers Dairy Foods, Inc.*, No. 1:05CV0484 DLB, 2007 U.S. Dist. LEXIS 86270, at *10 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and noting that "[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"). Courts in the Ninth Circuit commonly award fees of up to one third of the settlement funds where counsels' efforts are substantial and the results superior. *In re Heritage Bond Litig.*, No. 2-ML-1475-DT, 2005 U.S. Dist. LEXIS 13555, at *58 (C.D. Cal. June 10, 2005) (awarding one-third of the fund, and collecting cases awarding one third of the fund). *See also Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. June 1, 2010) (awarding 33.33% common fund, and collecting cases, noting that "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases").

Here, the requested fee is in line with the Ninth Circuit benchmark and within the range of percentages courts in this Circuit have awarded in similar securities settlements. *See In re China Educ. All., Inc.*, No. 2010CV09239CASJCX, 2013 U.S. Dist. LEXIS 198306, at *1 (C.D. Cal. Mar. 11, 2013) (awarding fees of 25% of $2,425,000 settlement); *Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *58 (awarding one third of $27,783,000); *In re Nuvelo, Inc. Sec. Litig.*, No. C 07-04056 CRB, 2011 U.S. Dist. LEXIS 72260, at *10-11 (N.D. Cal. July 6, 2011) (awarding 30% of $8.9 million); *Am. Apparel*, 2014 U.S. Dist. LEXIS 184548, at *109 (awarding 25% of $4.8 million); *Omnivision*, 559 F. Supp. 2d at 1049 (awarding 28% of $13.75 million).

Moreover, if this were not a class action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *See,*

10

*e.g., Blum*, 465 U.S. at 903 n.20 ("In tort suits, an attorney might receive one third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery"); *In re M.D.C. Holdings Sec. Litig.*, No. 89-90, 1990 U.S. Dist. LEXIS 15488, at *22 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery"). That the customary contingent fee in the private marketplace is equal to or greater than 30% supports Plaintiff's Counsel's request for the lower contingent fee of 25%.

Nothing of record indicates that this case is an outlier, requiring reduction from the benchmark 25% award.

**B.    A Lodestar Crosscheck Shows the Requested Fee is Reasonable**

"In cases where courts apply the percentage-of-the-fund method to calculate fees, they should use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award." *Am. Apparel*, 2014 U.S. Dist. LEXIS 184548, at *65; *Vizcaino*, 290 F.3d at 1050 ("the lodestar may provide a useful perspective on the reasonableness of a given percentage award"). Courts calculate lodestar by assessing attorneys' hourly rates for reasonableness and multiplying the rates by the number of hours reasonably spent, and then cross-checking the resulting number against the fee award. *In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 845 (E.D. Va. 2016). Indeed, under the lodestar method, courts often award fees that are a multiple higher than counsel's lodestar in order to recognize and compensate counsel's having assumed the representation without any assured payment of any fees. For example, in *Vizcaino*, the Ninth Circuit wrote that "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases. . . . This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino,* 290 F.3d at 1051.   Accordingly, "[i]n securities class actions, it is common for a counsel's [lodestar] figure to be adjusted upward by some multiplier reflecting a variety

11

of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel." *Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at \*71.

When using the lodestar to calculate attorney fee awards, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). When the lodestar is merely used as a cross-check, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007). Thus, "an itemized statement of legal services is not necessary for an appropriate lodestar cross-check." *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 U.S. Dist. LEXIS 55622, at \*27 (D. Ariz. Apr. 20, 2012). Here, the lodestar method – whether used directly or as a "cross-check" on the percentage method – strongly supports the reasonableness of the requested fee.

"Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates." *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010). Here, the relevant legal community is the national market for securities class-action firms with the skill and resources to undertake litigation of this magnitude. A nationwide market is appropriate given that Defendants retained a firm of national scope in King & Spalding. Plaintiff's Counsel's hourly rates range from up to $700 for partners to $355 for associates. Guiney Decl. ¶42. These rates are consistent with those of other attorneys engaged in similar litigation in this Circuit and across the nation. *See, e.g., In re LifeLock, Inc.,* 2010 U.S. Dist. LEXIS 102612, at \*30 (D. Ariz. Aug. 25, 2010) ("In computing the lodestar, the hourly billing rate to be applied is the "market rate," *i.e.*, the hourly rate normally charged in the community where counsel practices.) (citing *Blum,* 465 U.S. 886)*; see, e.g., Woburn Ret. Sys. v. Salix Pharms., Ltd.,* 14-cv-8925 (KMW), 2017 U.S. Dist. LEXIS 132515, at \*15 (S.D.N.Y. Aug. 18, 2017) (in securities class action, approving hourly partner billing rates between $550 and $995); *In re Amgen Inc.*

12

*Sec. Litig.*, No. CV 7-2536 PSG (PLAx), 2016 U.S. Dist. LEXIS 148577, at *27 (C.D. Cal. Oct. 25, 2016) (in securities class action, approving hourly rates of $750-985 for partners, $500-800 for of counsel/senior counsels, and $300-725 for other attorneys); *Roberti v. OSI Sys., Inc.*, No. CV-13-09174 MWF (MRW), 2015 U.S. Dist. LEXIS 164312, at *20 (C.D. Cal. Dec. 8, 2015) (in securities class action, approving hourly rates of between $525 and $975).

In fact, rates ranging between $800 and $1325 per hour for partners and between $520 and 630 per hour for associates were recently approved for rates of a national securities litigation firm in a lodestar cross-check in this District. *See Smilovits v. First Solar Incorporated, et al.*, 12-cv-00555-DGC (D. Ariz.), ECF Nos. 718-1 and 731.

Here, Plaintiff's Counsel dedicated 619.3 hours of professional time prosecuting this Action from its inception through January 27, 2021.[6] Guiney Decl. ¶¶41-42. Plaintiff's Counsel's total lodestar, based on its attorneys' current rates, is $309,271.50. *Id.* An award of 25% of the Settlement Fund, or $425,000, results in a lodestar multiplier of 1.37, *id.* ¶36, well within the range typically awarded in this Circuit. *See, e.g., Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) ("Counsel's lodestar yields a 3.07 multiplier, which is well within the range for reasonable multipliers."); *Feller v. Transamerica Life Ins. Co.*, No. 16-CV-01378 CAS (GJSx), 2019 U.S. Dist. LEXIS 19440, at *43-44 (C.D. Cal. Feb. 6, 2019) (2.97 multiplier "well-within the range of appropriate multipliers recognized by this Court and by other courts within the Ninth Circuit."); *Vizcaino*, 290 F.3d at 1051 (approving 3.65 multiplier, which was affirmed by the Ninth Circuit, and finding that most multipliers range from 1.0 to 4.0); *Pointer v. Bank of Am., N.A.*, No. 14-cv-00525, 2016 U.S. Dist. LEXIS 176930, at *54 (E.D. Cal.

---

[6] In addition to the time expended to date, Plaintiff's Counsel will spend additional time preparing Plaintiff's reply in support of final approval (if necessary), preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, but will not seek further compensation. Guiney Decl. ¶44.

Dec. 21, 2016) ("the requested multiplier of 2.4 is within the range accepted in the Ninth Circuit … [and] supports the requested fees here"); *Apollo Grp., Inc.*, 2012 U.S. Dist. LEXIS 55622, at \*27 (applying a 1.74 multiplier to plaintiffs' counsel's fees). The lodestar crosscheck, therefore, supports Plaintiff's request for 25% in attorneys' fees from the common fund.

### C.    The Reaction of the Settlement Class Supports the Requested Award

Although not specifically articulated by *Vizcaino*, district courts in the Ninth Circuit may consider the reaction of the class when deciding whether to award the requested fee. *See Heritage Bond*, 2005 U.S. Dist. LEXIS 13627, at \*48 ("The presence or absence of objections ... is also a factor in determining the proper fee award.").

Plaintiff's Counsel are making this motion before the objection deadline so that Class members have a chance to read it on the settlement website and comment on it. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) ("Allowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members.").

To date, the Settlement Notice has been sent to over 15,926 potential Class members and the Notice was published in Investor's Business Daily and transmitted on GlobeNewswire. *See* Evans Decl. ¶¶7, 9. Class members were informed in the Settlement Notice that Plaintiff's Counsel were moving for attorneys' fees in an amount not to exceed 30% of the Settlement Fund. Class members were also advised of their right to object to the fee and expense request, and that any such objections were required to be filed with the Court and served on counsel no later than February 12, 2021.

As of the date of this motion, Plaintiff's Counsel have received no objections to their fee and expense request. Guiney Decl. ¶14. The absence of objections from Class members heavily supports Plaintiff's Counsel's fee and expense request, which is lower than the amount provided than in the Notice. *In re Immune Response Sec. Litig.*, 497 F.

14

Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("[T]he lack of objection from any Class Member supports the attorneys' fees award").

## II.  PLAINTIFF'S COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Plaintiff's Counsel seeks reimbursement for their actual, reasonable out-of-pocket expenses of $30,303.42 that they necessarily incurred in prosecuting this case since inception and achieving an excellent result for the Class. Guiney Decl., ¶49. The Notice informed Class Members that Plaintiff's Counsel would seek reimbursement of litigation expenses of no more than $40,000. Guiney Decl., ¶52.  Accordingly, Plaintiff's Counsel request of $30,303.42 worth of expenses it incurred prosecuting this Action is well within the maximum amount described in the Notice. Guiney Decl. ¶52. These expenses are the types that are routinely charged to fee-paying clients. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *see also Immune Response*, 497 F. Supp. 2d at 1177.

The Court should approve Plaintiff's request for reimbursement. *In re Metro. Sec. Litig.*, No. CV-04-025 FVS, 2006 U.S. Dist. LEXIS 73001, at *14 (E.D. Wash. Oct. 6, 2006) (Van Sickle, J.) ("Litigation expenses are compensable in a common fund case if the particular costs are reasonable and if they are of the type typically billed by attorneys to paying clients in the market place.") (citing *Vincent v. Hughes Air West*, 557 F.2d 759, 769 (9th Cir. 1977)); *Dennings v. Clearwire Corp.*, No. C 10-1859 JLR, 2013 U.S. Dist. LEXIS 64021, at *27 (W.D. Wash. May 3, 2013) ("[t]he prevailing view is that expenses are awarded in addition to the fee percentage") (citing Alba Conte, Attorney Fee Awards § 2:08 (3d ed. 2004)).

The categories of expenses for which counsel seek reimbursement are the type of expenses routinely charged to paying clients and should be reimbursed from the common fund. A breakdown of the expenses is set forth in the Guiney Decl., ¶49.

The largest expenses are mediation fees and expert fees. The mediation and mediator were critical components in reaching the Settlement, and Plaintiff's Counsel deemed a financial expert necessary to establish a supportable damages model as well as

15

that Taronis' stock trades on an efficient market, permitting this case to proceed as a class action. Guiney Decl., ¶51. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (proving market efficiency is essential to maintaining a securities class action based on misrepresentations). The expert fees are reasonable and, indeed, relatively small. *Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 U.S. Dist. LEXIS 63312, at *30 (C.D. Cal. May 6, 2014) (expenses of $420,000, of which "vast majority" were expert opinions and testimony, were reasonable).

The remaining expenses consist of the costs of online legal research, coach-class travel, and photocopying, which are customarily reimbursed in class settlements. Courts routinely recognize that these are expenses that should be reimbursed. *Am. Apparel*, 2014 U.S. Dist. LEXIS 184548, at *43 (experts and consultants, online research, airfare, lodging, ground transportation, meals while traveling, mediation, web-hosting for document review, transcripts, messengers, service of process); *Dennings*, 2013 U.S. Dist. LEXIS 64021, at *27 (similar).

To date, no objections to the expense request have been received, and the amount requested is below the $40,000 disclosed in the Notice. Guiney Decl., ¶51. Plaintiff's Counsel respectfully requests reimbursement for these expenses.

## III.    PLAINTIFF'S AWARD SHOULD BE APPROVED

Plaintiff's Counsel also seeks an award of $2,600 to the Lead Plaintiff.

The PSLRA provides that courts may approve awards to reimburse lead plaintiffs for reasonable costs and expenses, including lost wages, related to representing the class. *See* 15 U.S.C. §78u-4(a)(4). Such awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009). The payment requested here falls well within the range that courts typically award. *See e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457 (9th Cir. 2000) (affirming "a $5,000 incentive award to each Plaintiff").

Plaintiff was actively involved in every step of the litigation, having (1) volunteered to file a motion seeking appointment as lead plaintiff; (2) reviewed complaints, motion papers and other pleadings; (3) regularly communicated and corresponded with counsel regarding the litigation and settlement; (4) gathered and produced information to Plaintiff's Counsel concerning Plaintiff's Taronis investments; and (5) making himself available to be deposed if needed, and to testify if there was a trial. *See* Guiney Decl. ¶54 and Ex. C.

Moreover, the Notice informed Settlement Class Members that Plaintiff's Counsel would seek an Award for Plaintiff not to exceed $5,000. To date, no objections have been raised in response to the request. Evans Decl. ¶12-13; Guiney Decl. ¶53.

Courts in this Circuit routinely award representative plaintiffs similar or greater amounts. *See, e.g., Roe v. Frito-Lay, Inc.*, No 14-cv-00751, 2017 U.S. Dist. LEXIS 53902, at *8 (N.D. Cal. Apr. 7, 2017) ("[A] $5,000 incentive award is presumptively reasonable in the Ninth Circuit."); *Ko v. Natura Pet Prods.,* C 09-021619-SBA, 2012 U.S. Dist. LEXIS 128615, at *44 (N.D. Cal. Sept. 10, 2012) ($5,000 plaintiff award); *Am. Apparel*, 2014 U.S. Dist. LEXIS 184548, at *34 (awarding an incentive award of $6,600 in a securities class action); *In re Regulus Therapeutics Sec. Litig.*, No. 17-cv-182 BTM RBB, 2020 U.S. Dist. LEXIS 202787, *25 (S.D. Cal. Oct. 29, 2020) (approving requested $2,000 award).

Plaintiff dedicated his own valuable time, faithfully representing the Settlement Class. Here, the requested award to Plaintiff is reasonable, amounting to a modest percentage of the Settlement Fund. The Court should award the requested amount to Plaintiff.

## IV.    CONCLUSION

For the foregoing reasons, the Court should award attorneys' fees of 25% of the Settlement, or $425,000, together with interest thereon, and expenses of $30,303.42. The Court should also award Plaintiff $2,600.

17

Dated: January 29, 2021

                  /s/ Matthew M. Guiney
Matthew M. Guiney (admitted *pro hac vice*)
guiney@whafh.com
Malcolm T. Brown (admitted *pro hac vice*)
brown@whafh.com
Kevin G. Cooper (admitted *pro hac vice*)
kcooper@whafh.com
WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Fax: (212) 686-0114

*Lead Counsel for Lead Plaintiff Kui Zhu
and the Proposed Class*


JOHNSTON FISTEL LLP
Michael I. Fistel, Jr.
michaelf@johnsonfistel.com
40 Powder Springs Street
Marietta, GA 30064
Tel: (470) 632-6000
Fax: (770) 200-3101

*Additional Counsel for Lead Plaintiff Kui Zhu*

/807149

18

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and served electronically through the CM/ECF system to all counsel of record.

/s/ Matthew M. Guiney
Matthew M. Guiney